Filed 10/22/14 Unmodified opinion attached

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| ELLIS LAW GROUP, LLP, | |
| Plaintiff, Cross-defendant and Respondent, | C072820 |
| v. | (Super. Ct. No. 34201000067737CUBCGDS) |
| NEVADA CITY SUGAR LOAF PROPERTIES, LLC, | ORDER MODIFYING OPINION |
| Defendant, Cross-complainant and Appellant. | [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion filed October 3, 2014, in the above cause is modified as follows:

On page 17, delete the second full paragraph and replace it with the following:

Here, the record discloses no indicia of an attorney-client relationship between ELG and Major. For example, there was no attorney-client fee agreement as required by Business and Professions Code section 6148. Moreover, ELG procured legal malpractice insurance for Major by listing him as "of counsel" with the insurer. The record does not show Major used anything other than ELG computers and software to record his time. Major did not file an association of counsel to appear on the anti-SLAPP motion. However, ELG filed an association of counsel for another attorney, Larry Lockshin, for

1

his assistance in defending ELG.  Thus, ELG signaled it understood the need for a notice of association of counsel for outside counsel.  The silence as to Major's participation in the case is telling.

This modification does not change the judgment.


_____HULL_____, Acting P.J.


_____ROBIE_____, J.


_____HOCH_____, J.

Filed 10/3/14 Unmodified version

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| ELLIS LAW GROUP, LLP,<br><br>       Plaintiff, Cross-defendant and Respondent,<br><br>       v.<br><br>NEVADA CITY SUGAR LOAF PROPERTIES, LLC,<br><br>       Defendant, Cross-complainant and Appellant. | C072820<br><br>(Super. Ct. No. 34201000067737CUBCGDS) |

     APPEAL from a judgment of the Superior Court of Sacramento County, Shelleyanne W.L. Chang, Judge.  Reversed.

     LAW OFFICES OF KRISS HALPERN and Kriss S. Halpern for Defendant, Cross-complainant and Appellant.

     ELLIS LAW GROUP, Mark E. Ellis, Ronald R. Poirier and Elizabeth Handelin for Plaintiff, Cross-defendant and Respondent.

This case illustrates that "[a]ll too often attorney fees become the tail that wags the dog in litigation." (*Deane Gardenhome Assn. v. Denktas* (1993) 13 Cal.App.4th 1394, 1399.) Here, Nevada City Sugar Loaf Properties LLC (Sugar Loaf) challenges an award of $14,553.50 in attorney fees to Ellis Law Group LLP (ELG) as the prevailing party on a special motion to strike pursuant to Code of Civil Procedure section 425.16 (anti-SLAPP motion). Sugar Loaf contends the trial court erred in awarding attorney fees for work on the anti-SLAPP motion performed by attorney Joseph R. Major because Major was a member of ELG on whose behalf the motion was filed. Relying on case law holding self-represented law firms may not be awarded attorney fees for an anti-SLAPP motion, Sugar Loaf argues the fee award must be reversed.

ELG counters that Major acted as an independent contractor to that law firm because he had no billable hour requirements, did not accrue vacation time, received no health care benefits, and was paid by the hour without deduction for taxes. The trial court agreed with ELG that Major's status as an independent contractor to ELG allowed the law firm to receive attorney fees under the anti-SLAPP statute.

We conclude the trial court erred in awarding fees to ELG under the anti-SLAPP statute. With only a single exception, Major was listed as a member of ELG in the caption of documents filed in support of ELG's anti-SLAPP motion. Moreover, Major signed documents for ELG's anti-SLAPP motion as an attorney with ELG. Major did not file a notice of association or substitution to indicate he was acting as outside counsel to ELG. And, when Major contacted opposing counsel regarding the filing of a document concerning the anti-SLAPP motion, he used an e-mail address and signature that identified him as a member of ELG. The possibility that Major was paid in a manner different than a regular "employee" of ELG may render him an independent contractor

2

for taxation purposes, but does not make him separate counsel for ELG for purposes of attorney fees under the anti-SLAPP statute. Accordingly, we reverse.[1]

## FACTUAL AND PROCEDURAL HISTORY

### *Anti-SLAPP Motion Granted in Favor of ELG*

In December 2010, a second amended cross-complaint was filed by the law firm of ELP for unpaid legal fees owed by Marison M. Mull, George W. M. Mull, and Nevada City Sugar Loaf Properties. In August 2011, plaintiff filed a notice of change of law firm name to Ellis Law Group, LLP. In September 2011, Sugar Loaf filed a cross-complaint for breach of fiduciary duty.

On November 16, 2011, "Mark E. Ellis, Ronald R. Poirier, and Joseph R. Major, attorneys of record" filed a notice they were associating the Law Offices of Larry Lockshin as co-counsel for ELG. Also on November 16, 2011, ELG filed an anti-SLAPP motion to Sugar Loaf's cross-complaint. Lockshin was not listed as counsel for the anti-SLAPP motion. Instead, the caption for the notice of the anti-SLAPP motion listed Mark E. Ellis, Ronald Poirier, and Joseph R. Major as attorneys for ELG. Although the accompanying memorandum of points and authorities for the motion listed only Ellis and Poirier as counsel for ELG, Major was included as an ELG attorney in the caption on the following documents: Ellis's declaration in support of the anti-SLAPP motion, Poirier's declaration in support of the motion, the proof of service for the initial anti-SLAPP documents, and notice of errata for the anti-SLAPP motion documents.

On December 19, 2011, Major sent an e-mail to counsel for Sugar Loaf in which he sought a stipulation for ELG's request to file an oversize reply brief. The signature of

---

[1] Our conclusion that the attorney fee award must be reversed obviates the need to consider Sugar Loaf's contentions that (1) insufficient evidence supports the award, and (2) the trial court erred in using a lodestar multiplier.

3

the e-mail read:  "Joseph R. Major  [¶]  Contract Attorney  [¶]  Ellis Law Group LLP."
The e-mail address used by Major was "jmajor@ellislawgrp.com."

Major's name again appeared as an attorney with ELG in the caption of a request to file an oversize reply brief to Sugar Loaf's opposition to the anti-SLAPP motion. Major signed the request, "Joseph R. Major  [¶]  Attorney for Plaintiff/Cross-Defendant [¶]  ELLIS LAW GROUP, LLP."  In the accompanying declaration, Major declared:  "I am a contract attorney at the Ellis Law Group, LLC."  Major was included as an ELG member on the caption of the reply to Sugar Loaf's opposition and the caption on the proposed order for granting the anti-SLAPP motion.

Sugar Loaf opposed the anti-SLAPP motion, which was granted by the trial court.

***ELG's Motion for Attorney Fees as Prevailing Party on the Anti-SLAPP Motion***

In May 2012, ELG filed a motion for attorney fees as the prevailing party on the anti-SLAPP motion.  Other than the memorandum of points and authorities in support of the anti-SLAPP motion itself, this marked the first time Major's name did not appear on the caption of an anti-SLAPP related document.  However, Major provided a declaration in support of attorney fees that explained:  "I have been a contract attorney doing work with ELG since November 2011.  As a contract attorney, I do not have a salary or billable hour requirement with ELG."  Major stated $37,160 should be awarded based on a $200 per hour billing rate and the claim he "spent a total of 183.3 hours in connection with ELG's special motion to strike the cross-complaint and motion for attorney fees."

APPEALABILITY

On December 18, 2012, Sugar Loaf filed a notice of appeal from an order entered on September 10, 2012.  The notice of appeal stated a motion for reconsideration had been filed on September 21, 2012, and was denied on November 14, 2012.  To further specify the trial court decision being appealed, Sugar Loaf checked the box on the notice

of appeal specifying an "order or judgment under Code of Civil Procedure section 904.1(a)(3)-(13)."

On February 15, 2013, ELG filed in this court a motion to dismiss the appeal on grounds the notice of appeal was not timely filed and Sugar Loaf was not an aggrieved party. On March 8, 2013, we summarily denied the motion along with ELG's request for attorney fees in bringing the motion to dismiss.

ELG reiterated the same arguments in its respondent's brief. To these, ELG added the contention that the notice of appeal was fatally defective because Sugar Loaf "failed to check/mark the correct box" on the notice of appeal. The arguments have no merit.

First, we conclude Sugar Loaf has appealed from an appealable order. Sugar Loaf's notice of appeal indicates it is appealing from the September 9, 2012, order awarding attorney fees for the anti-SLAPP motion to ELG. An appeal may be taken from an order awarding attorney fees for a successful anti-SLAPP motion. (See, e.g., *Mallard v. Progressive Choice Ins. Co.* (2010) 188 Cal.App.4th 531, 535, 536-537.) Subdivision (a)(13) of Code of Civil Procedure section 904.1 provides that an order granting an anti-SLAPP motion is appealable. Thus, the Code of Civil Procedure reflects the final and dispositive nature of an order granting an anti-SLAPP motion. Although denominated an "order," the granting of an order dismissing a case on the basis of the anti-SLAPP statute has the same effect as a final judgment. When the trial court issues an appealable order akin to a final judgment, a party may appeal from a subsequent order granting or denying a request for an award of attorney fees and costs as an "order after judgment" –- or, here, more aptly described as an order after an appealable order. (Code Civ. Proc., § 904.1, subd. (a)(2); see *Otay River Constructors v. San Diego Expressway* (2008) 158 Cal.App.4th 796, 805.) Consequently, the order awarding attorney fees to ELG is an appealable order. (*Mallard v. Progressive Choice Ins. Co.*, *supra*, 188 Cal.App.4th at p. 535.)

Given that the appeal lies under Code of Civil Procedure section 904.1, subdivision (a)(2), Sugar Loaf did check the wrong box on the notice of appeal form by indicating an appeal based on subdivisions (a)(3)-(13). However, the mistake is not fatal to the appeal. California Rules of Court, rule 8.100(a)(2) provides that a "notice of appeal must be liberally construed." This rule has been construed to mean a notice of appeal is sufficient if "it is reasonably clear what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced." (*Luz v. Lopes* (1960) 55 Cal.2d 54, 59.) Here, the notice of appeal clearly indicated the subject of the appeal was the order entered on September 9, 2012, which can only refer to the order granting attorney fees to ELG. Consequently, the notice of appeal was sufficient even if the wrong box was checked to identify the particular subdivision of Code of Civil Procedure section 904.1 that authorizes this appeal.

Second, we determine whether Sugar Loaf's notice of appeal is timely. Notice of entry of the order awarding attorney fees was given on September 14, 2012. Within the 10-day period provided by Code of Civil Procedure section 1008, subdivision (a), ELG filed a valid motion for reconsideration on September 21, 2012. The trial court denied the motion for reconsideration on November 14, 2012. The denial of the motion for reconsideration was not served on any party. Sugar Loaf filed its notice of appeal on December 18, 2012 –– within 90 days after ELG filed its motion for reconsideration.

The notice of appeal was timely because California Rules of Court, rule 8.108 provides that after a valid motion to reconsider is filed, "the time to appeal from that order is extended for all parties until the earliest of: (1) 30 days after the superior court clerk or a party serves an order denying the motion or a notice of entry of that order; [¶] (2) 90 days after the first motion to reconsider is filed; or [¶] (3) 180 days after entry of the appealable order." (Cal. Rules of Court, rule 8.108(e)(1)-(3).) Here, the 30-day deadline was not triggered by service of the denial of the motion for reconsideration and

6

the 180-day deadline after entry of the order granting attorney fees did not elapse until March 8, 2013. Thus, the earliest applicable deadline was 90 days after the filing of the motion for reconsideration —- a deadline Sugar Loaf did not miss.

Third, Sugar Loaf is an aggrieved party. "One is considered 'aggrieved' whose rights or interests are injuriously affected by the judgment. [An] [a]ppellant's interest ' "must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment." ' " (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737.) An order directing Sugar Loaf to pay attorney fees is clearly immediate, pecuniary, and substantial. ELG's assumption Sugar Loaf is appealing from the motion for reconsideration misunderstands Sugar Loaf's reliance on the motion for purposes of extending the deadline to appeal. As the notice of appeal indicates, Sugar Loaf is challenging the order granting attorney fees under the anti-SLAPP statute. Because Sugar Loaf has filed a proper and timely notice of appeal, we proceed to consider the merits of the appeal.

## DISCUSSION

### *Award of Attorney Fees to the Prevailing Defendant on an Anti-SLAPP Motion*

Sugar Loaf contends the trial court erred in awarding attorney fees for the work provided by attorney Major on the anti-SLAPP motion because he was a member of ELG. Relying on case law holding attorneys may not recover fees for self-representation, Sugar Loaf urges us to reverse the fee award. ELG counters Major was an independent contractor who had no billable hour requirement, sometimes worked from home, did not accrue vacation time, and was paid without deduction for taxes or social security. We conclude the attorney fees must be stricken.

7

## A.

### *Attorney Fees Under Code of Civil Procedure Section 425.16*

"The issue of a party's entitlement to attorney's fees is a legal issue which we review de novo." (*Sands & Associates v. Juknavorian* (2012) 209 Cal.App.4th 1269, 1278 (*Sands*), quoting *Garcia v. Santana* (2009) 174 Cal.App.4th 464, 468.)

Under the anti-SLAPP statute, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." (Code Civ. Proc., § 425.16, subd. (c)(1).) An exception to this fee-shifting provision applies to self-represented attorneys. (*Trope v. Katz* (1995) 11 Cal.4th 274 (*Trope*).) In *Trope*, the California Supreme Court held a law firm was not entitled to attorney fees after it successfully represented itself against a client who brought a breach of contract claim. (*Id.* at pp. 279, 292.) Even though the contract in *Trope* contained a fee-shifting provision and Civil Code section 1717 permits the recovery of reasonable attorney fees incurred to enforce a contract with a fee-shifting clause, the court concluded the law firm had not incurred attorney fees in representing itself. (*Trope, supra*, at p. 292.) The *Trope* court reasoned that an "attorney who chooses to litigate in propria persona" by that choice "does not pay or become liable to pay consideration in exchange for legal representation." (*Ibid.*) Self-represented attorneys are not "obligated to *pay*" for their legal fees even if they have expended their time and lost other business opportunities. (*Id.* at p. 280.) In reaching this conclusion, *Trope* noted well-settled case law construed "reasonable attorney's fees" not to include fees for time spent by self-represented attorneys. (*Id.* at p. 281-282.)

The *Trope* court reasoned that "when it enacted [Civil Code] section 1717 the Legislature did not intend to allow doctors, architects, painters, or any other nonattorneys to receive compensation for the valuable time *they* spend litigating a contract matter on their own behalf. [Citations.] Therefore, to [award attorney fees] in this context would

8

be to hold that the time and opportunity that an attorney gives up when he [or she] chooses to litigate a case in propria persona are somehow qualitatively more important and worthy of compensation than those of other pro se litigants. There is no support in either the language or legislative history of [Civil Code] section 1717 for such disparate treatment of pro se litigants on the basis of their occupations." (*Trope*, *supra*, 11 Cal.4th at p. 285.)

In *Witte v. Kaufman* (2006) 141 Cal.App.4th 1201 (*Witte*), this court followed *Trope, supra,* 11 Cal.4th 274 to hold self-represented attorneys who successfully move for dismissal of an action under the anti-SLAPP statute may not recover fees for their time. (*Witte, supra*, at p. 1208.) *Witte* involved a claim for attorney fees based on the work provided by three attorneys on behalf of their law firm of Knox, Lemmon & Anapolsky (KLA). (*Id.* at pp. 1203, 1210.) KLA argued it was not self-represented, but represented by three attorneys at the firm. (*Id.* at p. 1210.)

As we explained, "[w]here an attorney-client relationship exists, the courts uniformly allow for the recovery of attorney fees under Civil Code section 1717. [Citations.] [¶] Cases that have allowed the recovery of attorney fees under the anti-SLAPP statute are similarly marked by the existence of an attorney-client relationship. [Citations.] [¶] This decisional authority and the plain language of section 425.16, subdivision (c) supports the conclusion that the commonly understood definition of attorney fees [as determined in *Trope*] applies with equal force to section 425.16 and a prevailing defendant is entitled to recover attorney fees if represented by counsel." (*Witte, supra,* 141 Cal.App.4th at p. 1208, quoting *Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 524.) We concluded that "like *Trope*, there is no attorney-client relationship between KLA and its individual attorneys. . . . The attorneys of KLA are the law firm's product. When they represent the law firm, they are representing their own interests. As such, they are comparable to a sole practitioner

9

representing himself or herself." (*Id.* at p. 1211.) As a result, the KLA attorneys were erroneously awarded their fees for prevailing on the anti-SLAPP motion.

In striking the fees, *Witte* distinguished the situation of in-house legal counsel who can recover fees for the representation of their organizations. (*Witte, supra,* 141 Cal.App.4th at p. 1210.) As we pointed out, in "*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084 (*PLCM Group*), the state high court permitted an award of attorney fees under Civil Code section 1717 to a corporation that appeared in the action through its in-house attorney. The court explained that none of the considerations that animated *Trope* apply in the case of in-house counsel. 'There is no problem of disparate treatment; in-house attorneys, like private counsel but unlike pro se litigants, do not represent their own personal interests and are not seeking remuneration simply for lost opportunity costs that could not be recouped by a nonlawyer. A corporation represented by in-house counsel is in an agency relationship, i.e., it has hired an attorney to provide professional legal services on its behalf. Nor is there any impediment to the effective and successful prosecution of meritorious claims because of possible ethical conflict or emotional investment in the outcome. The fact that in-house counsel is employed by the corporation does not alter the fact of representation by an independent third party. Instead, the payment of a salary to in-house attorneys is analogous to hiring a private firm on a retainer.' (*Id.* at p. 1093.) The court could 'discern no basis for discriminating between counsel working for a corporation in-house and private counsel engaged with respect to a specific matter or on retainer.' (*Id.* at p. 1094.)" (*Witte, supra,* at p. 1210.)

*Witte* also distinguished a situation in which a self-represented attorney hires outside counsel for additional assistance and seeks to recover for the bill incurred by outside counsel. As we noted, "[a]n attorney appearing in an action on his [or her] own behalf may nevertheless retain outside counsel for assistance, and the legal expenses incurred for such outside representation may be included in an award of attorney fees."

10

(*Witte, supra,* 141 Cal.App.4th at pp. 1211-1212.) However, the three members of KLA were not outside counsel to their own law firm and therefore not entitled to fees. (*Id.* at p. 1210.)

In *Sands, supra,* 209 Cal.App.4th 1269, the Court of Appeal reversed an award of attorney fees to Leonard Sands and Heleni Suydam –- attorneys who were "of counsel" to the law firm that was the prevailing party on a matter subject to contractual fee shifting. (*Id.* at pp. 1273, 1275.) As the *Sands* court explained, "when a law firm is the prevailing party in a lawsuit and is represented by one of its partners, members, or associates, it cannot recover attorney fees even though the litigation is based on a contract with a prevailing party clause." (*Id.* at p. 1272.) The question of whether "of counsel" attorneys should be considered members of the law firm for purposes of attorney fee shifting was determined by the test for whether "the relationship between a law firm and 'of counsel' is ' "close, personal, continuous, and regular." ' (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc*. (1999) 20 Cal.4th 1135, 1153 (*SpeeDee Oil*), italics omitted.) ' "[T]o the extent the relationship between [an attorney] or law firm and another [attorney] or law firm is sufficiently 'close, personal, regular and continuous,' such that one is held out to the public as 'of counsel' for the other, the . . . relationship must be considered a *single, de facto firm* for purposes of [avoiding the representation of adverse interests]." ' (*Id*. at p. 1154, italics added, citing Rules Prof. Conduct, rule 3–310.)" (*Sands*, *supra*, at pp. 1272-1273.)

As the *Sands* court acknowledged, the "of counsel" designation for attorneys " 'has, over the years, come to mean a variety of things in jurisdictions across the nation.' Attorneys who are of counsel to a firm may be permanent full-time practitioners who for various reasons are not on the traditional career path towards partnership in the firm. Of counsel attorneys also may be part-time affiliates of a firm who have other personal or professional commitments, or they may be potential partners brought into a firm for a

11

probationary period." (209 Cal.App.4th at p. 1291.) Despite the variation in practical arrangements for "of counsel" attorneys, the *Sands* court created "a bright-line rule" that attorneys of counsel to a law firm are sufficiently integral to a law firm as to disallow fees for defense of the firm. (*Id.* at p. 1295.) "To do otherwise would permit an 'of counsel' attorney to create a factual dispute as to whether his or her relationship with a law firm is close, personal, continuous, and regular." (*Ibid.*)

The *Sands* court considered dispositive the facts that "the Sands firm communicated to the public that Leonard Sands and Heleni Suydam were 'of counsel' to the firm. Both attorneys were listed as 'of Counsel' on the firm's letterhead, and appeared in various attorney directories as 'counsel' or 'of counsel' to the firm. Thus, it does not matter that they may have represented clients obtained through their own efforts, that they had what they call a 'separate' practice, or that they were not on the firm's payroll. In *SpeeDee Oil*, Attorney Disner made similar statements in his declaration, but the Supreme Court disregarded them. (See *SpeeDee Oil, supra*, 20 Cal.4th at p. 1142 . . . .)" (*Sands*, *supra*, 209 Cal.App.4th at p. 1295.) This analysis for "of counsel" attorneys is applicable for attorneys claimed to be "independent contractors" to the same law firm they are defending. Thus, ELG may recover attorney fees for Major's work only if Major was not a de facto partner, member, or associate of that law firm –- regardless of what his title might have been. (*Id.* at p. 1284.) Accordingly, we proceed to consider whether Major's work on behalf of ELG was essentially self-representation of ELG or in the nature of an attorney-client relationship between ELG and Major.

## B.

### *Major's Designation as an Independent Contractor to ELG*

In contrast to the *Sands* court's ability to craft a bright-line rule for recovery of attorney fees by lawyers "of counsel" to the same law firms they defend, we are unable to do so for "independent contractor" attorneys. "Independent contractor" is not one of the

12

recognized categories of membership or non-membership of a law firm for purposes of ethical duties and obligations. (*Sands, supra,* 209 Cal.App.4th 1269; see Rules Prof. Conduct, rules 1-100 [referring to attorneys governed by the Rules of Professional Conduct as "members of the State Bar"], 3–310 [referring to attorneys employed with a law firm only as "member[s]" for purposes of determining conflicts in representation]; Bus. & Prof. Code, § 6002 ["The members of the State Bar are all persons admitted and licensed to practice law in this State except justices and judges of courts of record during their continuance in office"].) The standards adopted by the Board of Governors of the State Bar for the Rules of Professional Conduct speak only of members of a firm as partners, associates, officers, shareholders, and "of counsel." (See, e.g., 23, pt. 5, West's Ann. Court Rules (2008 ed.) Stds., (8), foll., Rules Prof. Conduct, rule 1-400.) Thus, the description of "independent contractor" to a law firm lacks fixed definition insofar as it is intended to describe the legal relationship between an attorney and a law firm.

Instead, "independent contractor" is a term commonly used for tax characterization purposes. Indeed, ELG urges us to conclude Major was an independent contractor on the basis of Internal Revenue Service Revenue Ruling 87-41, 1987-1 C.B. 296 (1987) (Revenue Ruling 87-41). Revenue Ruling 87-41 provides "guidance concerning the factors that are used to determine whether an employment relationship exists between the Individual and the Firm *for federal employment tax purposes . . . .*" (Italics added.) To this end, Revenue Ruling 87-41 "uses a 20–factor test in determining whether a worker was an employee or an independent contractor." (*Kentfield Med. Hosp. Corp. v. U.S.* (N.D. Cal. 2002) 215 F.Supp.2d 1064, 1070.)

The determination made under Revenue Ruling 87-41 extends only to tax characterization and does not inform the nature of professional duties owed by a particular attorney to a law firm. Revenue Ruling 87-41 declares that "if the relationship of employer and employee exists, the designation or description of the relationship by the

13

parties as anything other than that of employer and employee is immaterial.  Thus, if such a relationship exists, it is of no consequence that the employee is designated as a *partner*, coadventurer, agent, independent contractor, or the like." (Italics added.)  In other words, the partner of a professional firm might be an independent contractor for purposes of federal taxation.  However, regardless of federal tax characterization for the compensation of law firm partners, under California law partners cannot recover attorney fees for defending their own law firms.  (*Sands*, *supra*, 209 Cal.App. 4th at p. 1272; *Witte, supra,* 141 Cal.App.4th at p. 1210.)  Consequently, the possibility that Major was compensated as an independent contractor within the meaning of federal tax rules does not determine whether he may recover attorney fees for representation of ELG on the anti-SLAPP motion.

## C.

### *ELG's Pleadings Represented that Major was a Part of ELG*

Major was a member of ELG during the time he worked on the anti-SLAPP motion because that was what ELG and Major repeatedly represented to the trial court and opposing counsel.  The caption of every anti-SLAPP document filed by ELG in which Major's name appeared listed him as an attorney with ELG.  Along with Ellis and Poirier, Major was listed as counsel for ELG on:  the notice and amended notice for the anti-SLAPP motion, declarations of Ellis and Poirier in support of the motion, proof of service for the motion, memorandum of points and authorities for the motion, notice of errata for the motion, application to file an oversize reply brief in support of the motion, reply to Sugar Loaf's opposition to the motion, and proposed order for the motion.  Major's name is missing on only one document filed on the anti-SLAPP motion:  a

14

memorandum of points and authorities in support of the motion that reflects only Ellis and Poirier's names.[2]

Major's uniform inclusion as a member of ELG in the caption of the anti-SLAPP documents is dispositive. A caption identifies "the attorney for the party in whose behalf the paper is presented . . . ." (Cal. Rules of Court, rule 2.111(1); see also *Soni v. Wellmike Enterprise Co. Ltd.* (2014) 224 Cal.App.4th 1477, 1489 [caption of pleading indicating attorneys were members of the Soni Law Firm refuted contention that the attorneys were independent of the firm for purposes of recovering attorney fees].) Thus, as one treatise notes, "For each paper filed, Cal Rules of Ct 2.111(1) requires the name 'of the attorney' for the party on whose behalf the paper is presented and the attorney's State Bar membership number to be specified in the upper-left corner of the first page. This wording seems to preclude the former practice of listing only a firm name without the name of an individual attorney. However, when a firm name is printed on the first page, in addition to an individual attorney's name and State Bar number, the court will then permit any attorney from that firm (who is a California State Bar member) to appear for the named client *without the need to file a form of association or substitution of attorneys*." (1 Cal. Civil Procedure Before Trial (Cont. Ed. Bar 2013 supp.) Pleadings and Court Papers, § 11.18, p. 553, italics added.) Major did not file a notice of association or substitution that would have been necessary if he had been listed in the caption as anything other than a member of ELG.

It has long been "presumed that an attorney appearing and acting for a party to a cause has authority to so do." (*Pacific Paving Co. v. Vizelich* (1903) 141 Cal. 4, 8.)

---

**2** The record does not shed light on why one version of ELG's points and authorities bears Major's name and one does not. The discrepancy does not undermine our observation that when Major appeared, he appeared as a member of ELG.

"There can scarcely be a more gross violation of the duty of an attorney than knowingly and willfully to appear for and represent a party to an action without authority." (*San Francisco Sav. Union v. Long* (1898) 123 Cal. 107, 113.) Thus, ELG's caption announced Major's membership in that law firm and his concomitant ability to act on behalf of ELG. Major acted as attorney for ELG by signing the notice of errata and request to file an oversize reply brief as "Attorney for plaintiff/cross-defendant Ellis Law Group, LLP." Major also sent an e-mail to Sugar Loaf's counsel regarding the request to file an oversize reply brief he signed as a "Contract Attorney" to "Ellis Law Group LLP." The e-mail address used by Major was jmajor@ellislawgrp.com, and further showed his connection with ELG.

Although he was identified as a "contract attorney" to ELG on a few occasions, most captions simply list him along with Ellis and Poirier as a member of ELG. These repeated representations of Major's ability to act on behalf of ELG demonstrate a relationship that was close, personal, continuous, and regular. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc*. (1999) 20 Cal.4th 1135, 1153 (*SpeeDee Oil*).) These representations are also consistent with evidence ELG provided the tools by which Major performed his legal work: a computer, software, an office, and malpractice insurance. Based on his close relationship with and assertions of authority on behalf of ELG, ELG cannot recover fees for Major's work in defending ELG with the anti-SLAPP motion.

ELG emphasizes the method by which it paid Major, i.e., by the hour and without benefits or tax deductions, as showing Major's independence of the firm. ELG also argues Major had no stake in the litigation other than his hourly fee. However, as we have noted, how Major was paid under federal taxation rules does not inform his status as legal counsel with ELG. In *Sands* and *SpeeDee Oil*, the possibility an attorney was not on the payroll of a law firm and even may have had a "separate" law practice did not

16

allow for sufficient separation to allow for an award of attorney fees.  (*Sands*, *supra*, 209 Cal.App.4th at p. 1295; *SpeeDee Oil, supra*, 20 Cal.4th at p. 1142.)  So too, the method of compensation does not negate ELG and Major's repeated representations to the trial court and opposing counsel that he was appearing as a member of ELG and authorized to act on its behalf.

**D.**

***No Indications Major Served as Outside Counsel***

ELG would be entitled to recover attorney fees if Major had been outside counsel hired for purposes of the anti-SLAPP motion.  In such an instance, outside counsel "hired to assist a litigant in propria persona has an attorney-client relationship with the litigant and owes the litigant fiduciary and ethical obligations."  (*Mix v. Tumanjan Development Corp*. (2002) 102 Cal.App.4th 1318, 1324.)

Here, the record discloses no indicia of an attorney-client relationship between ELG and Major.  For example, there was no attorney-client fee agreement as required by Business and Professions Code section 6148.  As required by Rule 3-410 of the Rules of Professional Conduct, Major did have legal malpractice insurance.  But ELG procured it for him by listing him as "of counsel" with the insurer.  The record does not show Major used anything other than ELG computers and software to record his time.  Major did not file an association of counsel to appear on the anti-SLAPP motion.  However, ELG filed an association of counsel for another attorney, Larry Lockshin, for his assistance in defending ELG.  Thus, ELG signaled it understood the need for a notice of association of counsel for outside counsel.  The silence as to Major's participation in the case is telling.

In sum, ELG and Major repeatedly announced his membership in ELG for purposes of the anti-SLAPP motion.  The evidence in the record shows a close, continuous, and personal relationship that defeats recovery of attorney fees for Major's work in defending ELG.

17

DISPOSITION

The order directing Nevada City Sugar Loaf Properties to pay $14,553.50 in attorney fees to Ellis Law Group LLP as the prevailing party on a special motion to strike pursuant to Code of Civil Procedure section 425.16 is reversed.  Nevada City Sugar Loaf Properties shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


      HOCH    , J.



We concur:



      HULL     , Acting P. J.



      ROBIE    , J.