Filed 1/21/25  In re Z.B. CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| In re Z.B., a Person Coming Under the Juvenile Court Law. | 2d Juv. No. B338641 (Super. Ct. No. 22JD-00347) (San Luis Obispo County) |
| SAN LUIS OBISPO COUNTY DEPARTMENT OF SOCIAL SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> J.B. et al., <br><br> Defendants and Appellants. | |

J.B. (Mother) and D.C. (Father) appeal from the juvenile court order terminating their parental rights as to their son, Z.B., and selecting adoption as the permanent plan.  (Welf. & Inst.

Code,[1] § 366.26.)  They contend the juvenile court erred when it denied their petitions to change court orders (§ 388) and found inapplicable the parental-benefit exception (§ 366.26, subd. (c)(1)(B)(i)).  They also contend the San Luis Obispo County Department of Social Services (Department) failed to make adequate inquiries pursuant to the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related provisions of California law (§ 224 et seq.).  We accept the Department's concession regarding ICWA, conditionally reverse, and remand for additional ICWA inquiries.

FACTUAL AND PROCEDURAL HISTORY

The parents have extensive criminal records and longstanding substance abuse issues.  Mother's convictions include narcotics offenses and prison terms for child cruelty.  Father's criminal convictions included burglary, false imprisonment, grand theft, child cruelty, and multiple probation violations.  Father maintained sobriety while incarcerated but consistently relapsed shortly after being released.

Both parents had children from prior relationships for whom they lost parental rights.  Based on Mother's "substance abuse, dangerous behavior, and associated neglect," her twins were placed in custody in 2016.  She successfully reunified with them but then lost her parental rights when she relapsed and neglected the children.  Mother reported sobriety of three and a half years after the twins were removed.  Father lost parental rights as to one child in 2018 because of substance abuse, domestic violence, neglect, and failure to comply with family

---

[1] Subsequent statutory references are to the Welfare and Institutions Code.

reunification services.  In 2020 a child welfare case was opened for a younger child based on substance abuse; Father was not offered reunification services and the child was reunified with her mother.

On November 30, 2022, Mother arrived at the probation department under the influence of drugs and tested positive for methamphetamine and fentanyl.  Probation officers found Z.B., then 10 months old, at home with Father, who also appeared to be under the influence of drugs.  Mother admitted she and Father had been using methamphetamine and fentanyl for the past several months.  Both parents were arrested and incarcerated for probation violations.  Father was thereafter sentenced to three years in prison.  With both parents incarcerated, Z.B. was placed in a foster home in San Luis Obispo County.

The juvenile court sustained the juvenile dependency petition.  (§ 300, subds. (b)(1), (g), (i).)  The court ordered reunification services for Mother.  The court denied reunification services for Father, who remained incarcerated.  (§ 361.5, subds. (b)(10) & (11), (e)(1).)

Z.B. was moved to a second foster home in May 2023.  In July, the court placed Z.B. with Mother for a 30-day trial visit and then reunified him with Mother.

On October 31, 2023, while living with Z.B., Mother overdosed on fentanyl, was found unconscious in her bathroom, and was revived by law enforcement.  A baggie believed to contain fentanyl was within Z.B.'s reach.  Z.B. was placed in a third foster home.

Mother was incarcerated for violating probation and charged with child cruelty.  The juvenile court sustained a supplemental petition (§ 387), found the previous disposition had

3

not been effective in protecting the child, and terminated Mother's reunification services.  Z.B. was placed in a fourth foster home, located in Fresno County.  The court set the matter for a permanency hearing (§ 366.26).

The parents filed petitions to modify court orders that sought reunification services and, for Mother, additional visitation.  (§ 388.)  The court held an evidentiary hearing to concurrently consider the section 388 petitions and permanency. The court denied the section 388 petitions.  The court found the parental benefit exception did not apply (§ 366.26, subd. (c)(1)(B)(i)), terminated Mother's and Father's parental rights, and set adoption as the permanent plan.

DISCUSSION

*Petitions for modification*

The parents contend the juvenile court erred when it denied their respective petitions to change court orders (§ 388).[2] Mother sought reinstatement of her reunification services, an increase in visitation, elimination of supervised visits, and a 30-day trial visit.  Father requested he receive reunification

---

[2] Father's notice of appeal challenges both the permanency determinations (§ 366.26) and denial of his petition for change order (§ 388).  Mother's notice of appeal specifies only the permanency determinations and does not check the box to appeal the denial of her section 388 petition.  Because the section 388 and 366.26 issues were heard together and respondent is not prejudiced by the omission, we exercise our discretion to liberally construe Mother's notice of appeal and consider both issues. (*Ellis Law Group, LLP v. Nevada City Sugar Loaf Properties, LLC* (2014) 230 Cal.App.4th 244, 251; *Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1324, fn. 5.)

4

services.  We conclude the court did not err.

"Any parent . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made."  (§ 388, subd. (a)(1).)  "Section 388 provides the 'escape mechanism' that . . . must be built into the process to allow the court to consider new information."  (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309.)

"The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child."  (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615.)  "We review the juvenile court's denial of a section 388 petition for an abuse of discretion."  (*Id.* at p. 616.)  " ' ["]The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' "  (*Ibid.*)

### 1.  Mother's showing

Mother's abuse of opiates began at least in 2012 when she gave birth to twins.  She was in a residential treatment program at the beginning of her pregnancy with Z.B. and completed the program when she gave birth.  She completed another residential program after Z.B. was removed in November 2022.  Before the petition here was filed, Mother had attended NA (Narcotics Anonymous), AA (Alcoholics Anonymous), and other group and individual drug and alcohol sessions, and had seen a therapist weekly.  At the time of her relapse in October 2023, Mother was receiving drug and alcohol services including POEG (Perinatal

5

Outpatient Extended Group).

In her section 388 petition, Mother stated she was now prioritizing her mental health, taking medication for depression, and attending substance abuse programs.

Mother testified she had not used illegal drugs for almost a year before her relapse in October 2023. Before that relapse, she had discontinued prescription medication for depression. She relapsed despite receiving injections of an opiate "blocker." After her relapse, she realized she was suffering from depression as well as a drug problem, resumed taking the anti-depressant drug, and began taking other medication. She now understood the importance of that medication to maintaining her sobriety. Mother had remained sober for seven months after the October 31 relapse.

When she was released from custody after her relapse, Mother resumed drug and alcohol services and attending NA and AA meetings. She attended weekly POEG sessions. She also began seeing a private therapist. She started random drug testing around January 2024 and had no positive tests. She testified her engagement with services was different than before because she was now "taking it a lot more seriously." She testified she learned tools through recent drug treatment that would support her sobriety, including to "pause, think and pause before reacting."

At the permanency hearing a witness from a local church testified that for the last year and a half, Mother was regularly participating in a faith-based recovery program and worship services. She observed that Mother was "engaged" and "attentive" when she interacted with Z.B., and he appeared happy.

Mother felt Z.B. had a strong bond with her. Mother continued working as a caregiver for an elderly woman, which she began before her relapse.

### 2. Father's showing

Father had struggled with alcohol issues since he was a teenager and started using hard drugs in his mid-20s. He graduated from a drug and alcohol program in 2018. He was released from custody eight days after Z.B. was born, then entered a sober living home. He relapsed two months later. He had not used drugs since he was arrested in November 2022. In the 10 years before that, the longest period of sobriety he had was 15 months in 2018.

Father's section 388 petition cited as changes in circumstances that he had been released from custody, was fully engaged in his treatment plan, obtained full-time employment, and demonstrated his commitment to sobriety. He testified the biggest change was he had reached out to his family.

Father was currently participating in drug programs, attended church meetings, was seeing a private therapist weekly, and completed a 12-step program. He was in a random drug testing program and had no dirty tests.

Father testified he was with Z.B. "pretty solidly for about eight months" shortly after his birth until Father's incarceration. During visits, Z.B. was "ecstatic" to see him.

### 3. Ruling

The Department and Z.B.'s counsel opposed the section 388 petitions and recommended parental rights be terminated so Z.B. could be freed for adoption. The Department noted the high number of moves Z.B. had made were challenging to him, he needed stability to progress in his developmental milestones, and

insufficient time remained for the parents to demonstrate their safety and stability.  The social worker testified that continued reunification services would be detrimental to Z.B. because it would put him at risk for having to change placements again.

The juvenile court found "[i]nsufficient evidence for change of circumstances" and denied the section 388 petitions.  The court noted that "both parents' addiction is long term, and their history of relapses after periods of sobriety has repeated itself."  Because it could not consider the petitions to change court orders "in a vacuum," but had to "look at the circumstances with a wider lens," the court found the period of sobriety insufficient to establish lasting changes.

### *4. Discussion*

To prevail in a section 388 petition, "the petitioner must show *changed*, not changing, circumstances."  (*In re Mickel O.*, *supra*, 197 Cal.App.4th at p. 615.)  "The change in circumstances supporting a section 388 petition must be material" and " 'substantial.' "  (*In re N.F.* (2021) 68 Cal.App.5th 112, 120-121.)  In our view, Mother and Father did not make that showing here.

"[A] showing of materially changed circumstances requires more than a relatively brief period of sobriety or participation in yet another program."  (*In re N.F.*, *supra*, 68 Cal.App.5th at p. 121; *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223.)  Although both parents were participating in therapy and other programming to address addiction, they had also done so before their most recent drug use.  We commend the parents for their recent sobriety and accept the juvenile court's conclusion that their intent to change was sincere.  Because their "periods of sobriety alternated with recurring drug use" (*In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423), however, it was not an abuse of

discretion for the juvenile court to conclude the parents had not shown a substantial change of circumstances.

The parents contend the statutory scheme provides inadequate time to demonstrate sobriety. But our Supreme Court has concluded the dependency timeframes constitutionally serve the state's interest in providing children with stable, permanent homes. (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 309; see *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 845.)

"When custody continues over a significant period, the child's need for continuity and stability assumes an increasingly important role. [Citation.] That need often will dictate the conclusion that maintenance of the current arrangement would be in the best interests of that child." (*In re Angel B.* (2002) 97 Cal.App.4th 454, 464 [affirming denial of § 388 petition].) Such is the case here. At the age of two years and five months, Z.B. had been removed from Mother's custody twice and placed in four foster homes. The Department reported he suffered "two very traumatic removals from his mother's care" and "exhibits unsecured attachment symptoms" with "a very low tolerance for stress."

"Childhood does not wait for the parent to become adequate." (*In re Marilyn H.*, *supra*, 5 Cal.4th at p. 310.) Denial of further reunification services was necessary to serve Z.B.'s " 'need for prompt resolution of his . . . custody status, the need to provide children with stable environments, and [reduce] the damage to a minor of prolonged temporary placements.' " (*In re Abbigail A.* (2016) 1 Cal.5th 83, 95.) The juvenile court did not

abuse its discretion in denying the section 388 petitions.

*Parental-benefit exception*

The parents contend the juvenile court erred when it failed to apply the parental-benefit exception to bar adoption as the permanent plan (§ 366.26, subd. (c)(1)(B)(i)).  We are not persuaded.

After reunification services have been terminated, the court sets a section 366.26 hearing " 'to select and implement a permanent plan for the child.' "  (*In re Caden C.* (2021) 11 Cal.5th 614, 630 (*Caden C.*).)  The court has the options of adoption with termination of parental rights, tribal adoption, guardianship, permanent relative care, or foster care.  (§ 366.26, subd. (b).)  The statutory preference is for adoption.  (§ 366.26, subd. (b)(1).)

The parental-benefit exception allows the court to choose an option other than adoption " 'in exceptional circumstances.' "  (*Caden C.*, *supra*, 11 Cal.5th at p. 631.)  The exception has three elements: "(1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child."  (*Ibid*.; § 366.26, subd. (c)(1)(B)(i).)  The parent must establish these three elements by a preponderance of the evidence.  (*Caden C.*, at p. 629.)

We review for substantial evidence the first two elements— consistent visitation and benefit from continuing the relationship.  (*Caden C.*, *supra*, 11 Cal.5th at pp. 639-640.)  Substantial evidence here supports the juvenile court's finding that the first two elements were present.  The parents visited with Z.B. consistently.  Z.B. was happy and excited to see them.  Their interactions were positive and loving without negative effects.

10

As to the third element, the juvenile court found that terminating the parental relationship would not be detrimental to the child when balanced against the benefits of the adoptive home. We review this element for substantial evidence as to factual determinations such as "specific features of the child's relationship with the parent," "the harm that would come from losing those specific features," and "the benefit of adoption." (*Caden C.*, *supra*, 11 Cal.5th at p. 640.) We review for abuse of discretion the "delicate balancing" of "the harm of losing the relationship against the benefits of placement in a new, adoptive home." (*Ibid*.) "A court abuses its discretion only when ' " 'the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination' " ' " such that " ' " 'no judge could reasonably have made the order.' " ' " (*Id*. at p. 641.)

" 'A showing the child derives *some benefit* from the relationship is not a sufficient ground to depart from the statutory preference for adoption.' " (*In re A.G.* (2020) 58 Cal.App.5th 973, 995.) "Friendly or affectionate visits are not enough." (*In re G.H.* (2022) 84 Cal.App.5th 15, 25.) " 'To overcome the preference for adoption and avoid termination of the natural parent's [parental] rights, the parent must show that severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed.' " (*Ibid*.)

We conclude the juvenile court's finding that the benefits of adoption outweighed the detriment of terminating the parental relationship was supported by substantial evidence and was not an abuse of discretion. Z.B.'s need for stability was overwhelming. He was traumatized by the two removals from

11

Mother's custody, and had been transferred to four different foster homes.

The record does not support the parents' contention that the juvenile court relied upon improper factors or overemphasized minor factors. The court appropriately mentioned Z.B.'s young age (*Caden C.*, *supra,* 11 Cal.5th at p. 632), but did not suggest his "age alone" justified denial of the parental-benefit exception. The court mentioned the parents' relapses and failure to resolve their drug abuse, but that discussion pertained to the section 388 petitions, not the section 366.26 determination.

Nor does the court's passing reference to whether the parents fulfilled "a parental role" constitute reversible error. *Caden C.* does not prohibit consideration of whether the parent occupied a "parental role" and is silent on that point. (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1157.) But because the phrase can have several meanings, unexplained reliance upon it can require reversal. (*In re Katherine J.* (2022) 75 Cal.App.5th 303, 319-321; *In re L.A.-O.* (2021) 73 Cal.App.5th 197, 210-212.) The appropriate " 'focus is whether there is a substantial, positive emotional attachment between the parent and child.' " (*Id.* at p. 211.) Here, the juvenile court properly explained that it considered "a parental role in the child's life that results in a significant positive emotional attachment." No error has been shown.

### ICWA

Mother and Father contend the case should be remanded for compliance with ICWA's inquiry requirements. The Department discussed possible Native American ancestry with the parents and with an individual variously described as a

12

paternal "uncle" or "distant cousin." The record includes information regarding the maternal grandparents and uncle and the paternal grandfather and Father's second cousins, but there is no evidence the Department attempted to contact them. Because it did not ask Z.B.'s extended family members whether he "is, or may be, an Indian child," the Department concedes it did not comply with its initial duty of inquiry. (§ 224.2, subds. (b)(2), (c).) We accept the concession, conditionally reverse, and remand for further proceedings. (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1136.)

## DISPOSITION

The juvenile court's order terminating Mother's and Father's respective parental rights to Z.B., entered June 13, 2024, is conditionally reversed, and the matter is remanded for compliance with the initial inquiry requirements of ICWA and related California law. After these inquiries have been made, the court shall make ICWA findings at a noticed hearing. If the court finds ICWA inapplicable, it shall reinstate its June 2024 order terminating parental rights. If the court concludes that ICWA does apply, however, it shall conduct further proceedings consistent with this opinion, including a new section 366.26 hearing that conforms with all relevant provisions of ICWA and the Welfare and Institutions Code.

NOT TO BE PUBLISHED.


BALTODANO, J.

We concur:


GILBERT, P. J.          CODY, J.


13

Gayle S. Peron, Judge

Superior Court County of San Luis Obispo

_____

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant J.B. (Mother).

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant D.C. (Father).

Rita L. Neal, County Counsel, Vincent M. Uberti, Deputy County Counsel, for Plaintiff and Respondent.