Filed 1/8/16  Christiansen v. Gross CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KAREN A. CHRISTIANSEN et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> JERRY GROSS et al., <br><br> Defendants and Respondents. | B256668 <br><br> (Los Angeles County <br> Super. Ct. No. BC527182) |
| KAREN A. CHRISTIANSEN et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> QUINN EMANUEL URQUHART & SULLIVAN et al., <br><br> Defendants and Appellants. | B258464 <br><br> (Los Angeles County <br> Super. Ct. No. BC527182) |

APPEAL from the judgment and postjudgment order of the Superior Court of Los Angeles County, Rolf. M. Treu, Judge.  Affirmed.

Hillel Chodos; Klika, Parrish & Bigelow and Franklin T. Bigelow, Jr., for Plaintiffs and Appellants Karen A. Christiansen and Strategic Concepts, LLC.

McCune & Harber, Dana John McCune and Jessica O. Gillette, for Defendant and Respondent Jerry Gross.

Peckar & Abramson and Nicholas W. Sarris, for Defendant and Respondent Telacu Industries, Inc.

Greenberg Glusker Fields Claman & Machtinger, Fred A. Fenster, Daniel G. Stone and Steven A. Stein, for Defendants and Respondents Brian Goldberg, Myra Lurie, Myra Demeter, and Lisa Korbatov.

Reed Smith, John S. Siamas, Paul D. Fogel and Brian A. Sutherland, for Defendants and Respondents Dannis Wolliver Kelley, Sue Ann Salmon Evans, Brian Duus, and Marilyn J. Cleveland.

Quinn Emanuel Urquhart & Sullivan, John. B. Quinn and Steven G. Madison, for Defendants and Appellants Quinn Emanuel Urquhart & Sullivan, Steven G. Madison, and Michael T. Lifrak.

_____

Plaintiffs Karen A. Christiansen and her company Strategic Concepts, LLC, filed the instant action for fraud against several defendants: former school Superintendent Jerry Gross; construction firm Telacu Industries, Inc.; Beverly Hills Unified School District Board of Education members Brian Goldberg, Myra Lurie, Myra Demeter, and Lisa Korbatov (collectively the Board members); the law firm Dannis Wolliver Kelley and its attorneys Sue Ann Salmon Evans, Brian Duus, and Marilyn J. Cleveland (collectively the Dannis defendants); and the law firm Quinn Emanuel Urquhart & Oliver and its attorneys Steven G. Madison, and Michael T. Lifrak (collectively the Quinn defendants). Plaintiffs also alleged a cause of action for malicious prosecution against the Dannis and Quinn defendants arising from a criminal prosecution of Christiansen. The trial court sustained demurrers in favor of Gross and Telacu without leave to amend, and granted motions to strike under Code of Civil Procedure section 425.16 (the anti-SLAPP statute)[1] in favor of the Board members, the Dannis defendants and the Quinn defendants. Plaintiffs appeal from the judgment of dismissal following those orders.

On appeal, plaintiffs contend: (1) the complaint alleged a cause of action for fraud against Gross and Telacu; (2) the Board members' actions to void plaintiffs' contract with Beverly Hills Unified School District (the District) were not a protected activity under the anti-SLAPP statute; (3) interim adverse rulings did not establish probable cause for the criminal prosecution against Christiansen, because her conviction was obtained through fraud, perjury, or other unfair means; and (4) the awards of attorney fees to the Board members and the Dannis defendants were excessive. We conclude the demurrers were properly sustained, because the fraud cause of action was barred by the statute of limitations. Plaintiffs' request for leave to amend must be denied, because the new allegations would be barred by the statute of limitations as well. The trial court properly

---

[1] SLAPP is an acronym for "Strategic Lawsuits Against Public Participation." (*Equilon Enterprise v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 57, fn. 1.) All further statutory references are to the Code of Civil Procedure, unless otherwise stated.

found a notice to plaintiffs that their contracts were void was prelitigation activity protected by the anti-SLAPP statute. The fraud cause of action was barred by the statute of limitations, and no evidence showed plaintiffs had a probability of prevailing on the issue of fraud or perjury in connection with the criminal prosecution. The appeal from the orders awarding attorney fees was premature, and no abuse of discretion has been shown in any event.

The Quinn defendants filed an appeal from an order denying an award of attorney fees, because they represented themselves. They contend that they are entitled to an award of fees, because they have a contractual agreement that requires the District to indemnify them. We conclude the trial court properly found the Quinn defendants are not eligible for an award of fees in this case.

## FACTS AND PROCEDURAL HISTORY

### Allegations of the Complaint

On November 8, 2013, Christiansen and Strategic Concepts filed the instant action for fraud against Gross, Telacu, the Board members, the Dannis and Quinn defendants, and for malicious prosecution against the Dannis and Quinn defendants. The complaint alleged the following facts.

In February 2005, the District employed Christiansen as the Director of Planning and Facilities. Jeffrey Hubbard was the superintendent of the District. Christiansen formed Strategic Concepts. Christiansen's employment contract with the District ended on May 31, 2006. In June 2006, plaintiffs entered into an agreement with the District to provide advice and assistance on various construction projects through June 2009. The agreement expressly stated that Christiansen was an independent contractor and not an employee of the District. The agreement was drafted by the District's attorneys, who were experienced public agency lawyers. The District's Board of Education (the Board) approved the agreement by an unanimous vote. Also in June 2006, Hubbard left his

3

employment with the District for a new position as superintendent of Newport-Mesa Unified School District.

On June 3, 2008, the District entered into a new written agreement with Strategic Concepts for consulting services in connection with the construction and renovation of physical facilities that were ongoing or contemplated under a 2002 bond issue. The District agreed to pay for the services of Strategic Concepts personnel at specified hourly rates, for a total payment not to exceed $953,000 for the first six months of 2008, with payments for additional services after June 2008. The June 2008 agreement was drafted by the District's experienced public agency lawyers and unanimously approved by the Board. Christiansen and Strategic Concepts fully performed the services required under the June 2008 contract. Their performance was praised and commended repeatedly by the District, its Board members and officers, privately and publicly. They were paid $849,000 for services during the first six months and $663,000 for services during the latter half of 2008 unrelated to a 2008 bond issue.

The June 2008 contract was amended on August 6, 2008. The amendment was reviewed by the District's attorneys and approved by a majority of the Board members. Under the amended agreement, Christiansen and Strategic Concepts would provide project management services for additional construction and renovation projects if a bond issue was approved by voters. The fee for the additional projects would be 2 percent of the overall program budget, and 4.5 percent of the construction value of each project, as approved by the Board. If the bond issue was approved by voters, the total fees to be earned by Christiansen and Strategic Concepts under the amendment were in excess of $16 million.

All of the agreements that Christiansen and Strategic Concepts entered into with the District were for professional services. None were subject to any competitive bidding requirements. In November 2008, voters approved the bond issue. Christiansen and Strategic Concepts began providing services for the projects contemplated by the bond issue.

4

In November 2008, Jerry Gross became interim superintendent of the District. Gross had been employed by the construction firm Telacu, a competitor of Strategic Concepts. Telacu paid Gross $100 per hour for business development, plus a commission based on revenues Telacu received from any business obtained by Gross. In February 2009, Gross became superintendent.

The District paid $2,075,000 to Strategic Concepts for fees through June 2009. The District and the Board members and officers, privately and publicly, praised and commended Christiansen and Strategic Concepts for their performance under the amendment. In July and August 2009, Christiansen and Strategic Concepts charged $372,661.82 for additional services.

Gross reviewed and discussed the contract with an officer of Telacu in the summer of 2009. Immediately following these discussions, he arranged for the Dannis firm to assist the District in voiding the contract between the District and plaintiffs. Gross did not disclose the financial arrangements he had with Telacu to the District when they discussed voiding the contract.

On August 13, 2009, attorney Cleveland, with the law firm that became Dannis, Wolliver & Kelley, sent a letter to Strategic Concepts on behalf of the District. She stated that the June 2006 employment agreement, the June 2008 agreement, and the August 2008 amendment were void under California's conflict of interest laws, including Government Code section 1090, for failure to comply with public contracting laws.[2] She asserted that the District would make no further payments to Christiansen and Strategic Concepts, and demanded that they disgorge and repay $4,853,184.30 to the District within seven days. District representatives appeared at the offices of Strategic Concepts

---

[2] Government Code section 1090, subdivision (a) prohibits city officers or employees from having a financial interest "in any contract made by them in their official capacity, or by any body or board of which they are members." City officers and employees cannot be purchasers in a sale or vendors in a purchase made in their official capacity. (*Ibid.*) Individuals cannot aid or abet a city officer or employee in violating the conflict of interest law. (Gov. Code, § 1090, subd. (b).)

that day, without notice, and took possession of all files, computers and other materials related to Strategic Concepts's work for the District.

Defendants knew Christiansen was not an employee or a de facto employee of the District. On August 25, 2009, Christiansen and Strategic Concepts filed an action against the District for declaratory relief and damages. On August 28, 2009, the District filed a cross-complaint against plaintiffs alleging the contracts were void and plaintiffs should be required to disgorge all payments. The District was represented by the Dannis firm.

Immediately after Strategic Concepts's contract was voided, Telacu applied to the District to take over management of the construction projects. Gross endorsed Telacu, and Telacu was selected as a finalist for the work. Gross did not disclose any of his prior financial arrangements with Telacu during the selection process. Telacu eventually became concerned its financial relationship with Gross would become known and withdrew its application.

In July 2010, defendants began a campaign to persuade the Los Angeles County District Attorney's Office to institute criminal proceedings against Christiansen. They sought to discredit her and increase pressure on her through the criminal prosecution. In October 2010, the Quinn law firm, and attorneys Madison, Lifrak and Michael Galvin, were substituted in as counsel for the District in the civil actions.

On November 10, 2010, plaintiffs took Gross's deposition in the course of discovery for their declaratory relief action. Gross explained the financial arrangement he had with Telacu, but claimed that he did not work for Telacu from February 2009 to July 2010. He revealed that he had discussed the contract with an officer of Telacu in the summer of 2009, and immediately after that conversation, he acted to have the District's attorneys void the contract. He admitted he was employed by Telacu from July 2010 to the present under the same financial arrangements for business development as he had previously worked for them. He denied having any compensation arrangement if plaintiffs were removed and replaced by Telacu as project and construction managers for the District.

6

Gross fraudulently engineered voiding the contract to displace plaintiffs and procure a lucrative project and construction management contract for Telacu, in order to receive a substantial commission. Plaintiffs are informed and believed that each of the other defendants were aware, no later than November 10, 2010, of the fraudulent and corrupt nature of the scheme to void the contract.

Despite this knowledge, defendants caused the District to continue to pursue a fraudulent, corrupt, malicious scheme to pursue groundless claims against the plaintiffs in the pending civil actions. A summary judgment motion by the District was denied on the ground, among others, that the argument the contract was void was not legally sound.

The district attorney's office filed a criminal complaint against Christiansen. An amended information charged her with four counts of felonious violation of Government Code sections 1090 and 1097, based on three contracts the District entered into on Christiansen's recommendation with a company named Johnson Controls and the 2008 amendment to the District's contract with plaintiffs.

As a result of the criminal prosecution, the civil actions were effectively stayed from December 2010 to October 2013. Defendants, through the Quinn defendants, actively provided public support and behind the scenes assistance to the prosecution to increase the likelihood of a criminal conviction. The District paid the Quinn defendants more than $700,000 of public funds for assistance with the criminal case while the civil actions were stayed.

Christiansen was bound over for trial on the four counts and convicted. She was sentenced to four years four months in prison and ordered to make restitution of approximately $3,500,000. Following the conviction and sentence, the defendants publicly celebrated her conviction and caused awards to be bestowed publicly on the prosecuting attorney and the Quinn defendants.

Christiansen's conviction was reversed on appeal in May 2013, with directions to dismiss the information. Christiansen was not a board member or officer of the District, and under undisputed facts, she was not an employee of the District at the time of the transactions. The appellate court concluded, as a matter of law, that Christensen could

7

not be guilty of violating Government Code sections 1090 and 1097.  The People's petition for review was denied.  In September 2013, Christiansen's conviction and sentence were set aside, the criminal case against her dismissed, and she was found factually innocent of the criminal charges against her.

In addition to the allegations above, the cause of action for fraud listed damages, including the amount due on the contract, profits they would have earned through completion of the contract, destruction of their business and personal reputations in the industry, attorney fees that Christiansen incurred in defending the criminal prosecution and appeal, and Christiansen's emotional distress.

Christiansen's cause of action for malicious prosecution against the Dannis and Quinn defendants incorporated the allegations above and listed damages resulting from the malicious institution and pursuit of the criminal prosecution.

## Demurrers

Gross filed a demurrer on the ground that the complaint failed to allege facts sufficient to constitute a cause of action for fraud against him.  Telacu filed a demurrer on the same ground and also argued that the cause of action was barred by the statute of limitations.

Telacu filed a request for judicial notice of an article in the Beverly Hill Courier published on October 16, 2009.  The newspaper reported Telacu was one of four companies selected through the initial screening process to take over the work formerly contracted to plaintiffs.  On October 12, 2009, Gross revealed his affiliation with Telacu to the Board.  He said he served as a part-time consultant immediately prior to his employment with the District.  Gross steadfastly asserted that he was not involved in the current selection process and had no current affiliation with Telacu, although he praised their abilities and workmanship.  He had attended the interviews with applicants for the replacement contract, but he had only observed and did not participate in any way.

Telacu also requested that the court take judicial notice of Goldberg's deposition testimony on November 1, 2010. In response to questions from plaintiffs' attorney, Goldberg stated that he knew of Telacu, knew they did construction management, and knew Gross had a relationship with Telacu before coming to the District. Plaintiffs' attorney asked if it was correct that Gross was a paid consultant for Telacu before coming to the District, but Goldberg did not know. When plaintiffs' attorney asked Goldberg if Telacu did the same type of work as Strategic Concepts, Goldberg initially said they did not, but eventually agreed that they did. He also acknowledged that Telacu applied for the contract to replace Strategic Concepts. Plaintiffs' attorney asked, "And as a matter of fact, isn't that the reason that Strategic was terminated was so that Gross could get his Telacu company this contract in place of Strategic?" Goldberg denied that this was the reason.

Plaintiffs opposed the demurrers on the ground that a claim for fraud may be maintained based on defendant's fraudulent misrepresentations to third parties which cause them to incur damage. They argued that the cause of action for fraud was based on the scheme to have the contract declared void, even though the defendants knew Christiansen did not and could not have violated the law. They also argued the allegation that they discovered the facts on November 10, 2010, must be taken as true for the purposes of demurrer.

Plaintiffs argued that Goldberg's testimony did not put them on notice of any fraud, corruption or impropriety. Goldberg acknowledged he was aware of Gross's previous affiliation with Telacu, and that Telacu applied for the position after plaintiffs' contract was voided, but he denied any impropriety. Plaintiffs did not learn the true nature of Gross's relationship with Telacu or the extent to which Gross involved Telacu in reviewing plaintiffs' contract, or the fraudulent and corrupt nature of the scheme to void the contract until they took the depositions of Gross and Jay Bell on November 10, 2010.

Gross and Telacu each filed a reply. After a hearing on March 21, 2014, the trial court sustained the demurrers on the ground that the complaint failed to allege fraud with

9

the requisite specificity as to any misrepresentations, reliance or resulting damages. The fraud cause of action was based on conduct taken to void the 2008 agreements and in connection with the criminal prosecution of Christiansen. Plaintiffs failed to identify any direct or indirect misrepresentations made by Gross or Telacu, or any reliance by plaintiffs on representations by Gross or Telacu. The court granted Telacu's request for judicial notice, but found that the evidence established only knowledge of the relationship between Gross and Telacu. Because plaintiffs failed to allege specific facts about misrepresentations made by Gross and Telacu, the court could not determine whether the fraud claim was barred by the statute of limitations based on knowledge of the relationship. Plaintiffs did not request leave to amend or demonstrate that the complaint could be amended, and as a result, the trial court sustained the demurrers without leave to amend.

**Board Members' Anti-SLAPP Motion**

The Board members filed an anti-SLAPP motion. They argued the fraud cause of action was based on allegations of a scheme to deprive the plaintiffs of contract benefits through meritless civil and criminal litigation. The gravamen of the allegations was a cause of action for malicious prosecution, not fraud, which is indisputably based on protected activity. To the extent the cause of action was also based on the demand letter, it concerned prelitigation conduct, which is also protected activity.

The Board argued plaintiffs could not demonstrate a likelihood of prevailing, because they had not alleged any misrepresentation with specificity. If the cause of action were an improperly labeled malicious prosecution claim, plaintiffs could not establish that the civil actions terminated in their favor. To the extent the action was based on the demand letter, the litigation privilege applied.

10

### Dannis Defendants' Anti-SLAPP Motion

The Dannis defendants filed an anti-SLAPP motion. They argued that activity related to civil litigation and criminal prosecution is protected petitioning activity. The protected activity extends to statements to non-parties made in connection with pending or anticipated litigation. The demand letter notifying plaintiffs that the contracts with the District were void and requesting repayment was a protected prelitigation statement.

The Dannis defendants argued that plaintiffs could not demonstrate a probability of prevailing on their cause of action for malicious prosecution, because interim adverse rulings in the trial court demonstrated probable cause in the criminal action. As to the cause of action for fraud, the Dannis defendants argued the plaintiffs failed to plead fraud with specificity. The alleged conduct was undertaken in anticipation of, or during, litigation and subject to the litigation privilege. Plaintiffs could not provide evidence of any statements by the Dannis defendants in support of the fraud claim which were not protected by the litigation privilege.

The Dannis firm submitted attorney Cleveland's declaration in support of the anti-SLAPP motion. She declared that she provided legal counsel to the District in 2009 and 2010. She advised the District in relation to contracts between plaintiffs and the District, and she represented the District in filing pleadings in civil actions. She sent the letter to plaintiffs in August 2009 advising them that the District was seeking repayment of the funds previously paid under agreements that were void under California law. Cleveland's communications with the district attorney's office were part of the Dannis firm's representation of the District. All communications, filings and actions she took related to plaintiffs or the civil cases were in anticipation or in furtherance of litigation. The Dannis defendants ceased representing the District in the civil cases in October 2010.

The Dannis defendants submitted attorney Duus's declaration in support of the anti-SLAPP motion. He declared that he represented the District in 2009 and 2010 under the supervision of Evans and Cleveland. Any communication he had with the district attorney's office related to the pending civil cases involving plaintiffs were made as part

11

of the Dannis defendants' representation of the District. All of the communications, filings and actions related to the civil cases were in anticipation or in furtherance of litigation. Attorney Evans provided a declaration containing essentially the same statements.

## Quinn Defendants' Anti-SLAPP Motion

The Quinn defendants filed an anti-SLAPP motion arguing that solicitation of, and cooperation with, a criminal investigation is protected petitioning activity under the anti-SLAPP statute. The plaintiffs could not demonstrate a probability of prevailing, because the interim adverse judgment in the criminal action, although reversed on appeal, established probable cause as a matter of law. The fraud cause of action against the Quinn defendants was based on the same actions as the malicious prosecution claim. Plaintiffs failed to allege a misrepresentation with the required particularity and alleged none of the necessary elements to state a cause of action for fraud.

## Plaintiffs' Opposition to Anti-SLAPP Motions

Plaintiffs filed a combined opposition to the anti-SLAPP motions. They clarified that the first cause of action for fraud was based on misrepresentations made in voiding their contract with the District and the second cause of action for malicious prosecution was based on the criminal proceedings against Christiansen.

Plaintiffs acknowledged that activities in connection with the criminal prosecution were protected. They argued Christiansen's conviction in the trial court did not establish probable cause as a matter of law, because the conviction was obtained through fraud, perjury, and other unfair and corrupt means. Plaintiffs stated the Board members may not have been aware of Gross's fraudulent motivation, but their actions to void the contracts without contacting their attorneys who drafted the contracts were suspect, and after the scheme was exposed in Gross's deposition testimony, they pursued criminal prosecution

rather than reinstate plaintiffs' contract. The Board members falsely testified in the criminal proceedings that Christiansen acted as an employee and supervised District employees. Plaintiffs suspect the Quinn defendants wrote motions for the prosecution and sought to intimidate potential witnesses. The jury instructions were incorrect and she was denied defenses.

Plaintiffs submitted Christiansen's declaration. She stated that the Board members falsely testified in trial that she acted as an employee after her employment contract was terminated, supervised other employees, and despite the express provisions of her contract with the District, was effectively a "de facto" employee.

Plaintiffs also submitted a copy of the August 13, 2009 letter written by Cleveland to the attorney for Strategic Concepts. The letter states that the District asked the Dannis defendants to research the status of the 2006 contract, 2008 contract, and 2008 amendment. The Dannis defendants concluded the contracts were void based on Strategic Concepts's violations of conflict of interest laws, including Government Code section 1090, and failure to comply with public contracting laws in the formation of the 2006 contract and the amendment. Since the contracts were void, the District would not make any further payments and was entitled to recover all consideration paid to date. The letter provided the specific amount that needed to be repaid. The District directed its staff not to allow Strategic Concepts to have access to District facilities and to arrange for the return of property.

Plaintiffs submitted a copy of a letter that attorney Evans wrote to the district attorney's office stating that her firm represented the District in a civil suit against plaintiffs for violation of Government Code sections 1090 and 12650. The firm was authorized by the District to lodge a formal criminal complaint against Christiansen. Government Code section 1090 provides for criminal prosecution of public employees that willfully violate the conflict of interest law. They accused Christiansen of using her position as an employee and her relationship with District staff and attorneys to further her own financial interests. In April 2006, while serving as an employee, she approached Superintendent Hubbard about serving in an independent contractor status. Christiansen

13

made a written proposal requesting the District allow her to perform the duties as an independent contractor. Hubbard signed the agreement before leaving the District to serve as superintendent of Newport-Mesa Unified School District. The 2006 agreement was never presented to the Board in open session, nor approved by the Board. The 2008 agreement was voted on by the Board and approved. They implied that the attorneys who drafted the agreements for the District had a personal relationship and a financial interest in maintaining their association with Christiansen. She did not advise the District that hiring a program manager required a competitive selection process, nor did she obtain competitive proposals on behalf of the District. The District expressed the view that Christiansen used her position to obtain financial benefit by advising the District to enter into contracts with her and her company to perform the same functions that she performed as a public employee. Each of the contracts that she advised the District to approve increased her compensation.

Plaintiffs submitted the Quinn defendants' billing information about fees charged to the District.


**Replies and Further Proceedings**


The Board members, the Dannis and Quinn defendants each filed a reply. The Dannis and Quinn defendants filed evidentiary objections to the declarations submitted by plaintiffs. The Dannis defendants also submitted attorney Cleveland's declaration stating that she drafted the August 13, 2009 letter in anticipation of litigation and the firm began drafting a complaint prior to the plaintiffs' complaint being filed.

After the hearing on March 21, 2014, the trial court granted the anti-SLAPP motions. The court entered a judgment in favor of the defendants on April 17, 2014.

The Board members filed a motion for an award of attorney fees in the amount of $39,063.50. On May 30, 2014, plaintiffs filed a notice of appeal from the April 17, 2014 judgment which purported to include any adverse postjudgment orders awarding attorney fees and costs. Following plaintiffs' notice of appeal, the Dannis defendants filed a

14

motion for attorney fees in the amount of $37,320. The Quinn defendants filed a motion for attorney fees in the amount of $214,653.75.

Plaintiffs opposed the fee motions on the grounds that the amounts were excessive, and the Quinn defendants were not eligible for fees, because they represented themselves. Plaintiffs admitted they had no information to dispute the hourly rates claimed, but argued that the bills showed some tasks were not related to the anti-SLAPP motions. Defendants filed replies.

After a hearing, the trial court granted the motions of the Board members and the Dannis defendants. The court denied the Quinn defendants' motion for an award of fees.

## DISCUSSION

### Rulings on Demurrers

#### A. Standard of Review

"We independently review the sustaining of a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. [Citation.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken. [Citation.]" (*Siliga v. Mortgage Electronic Registration Systems, Inc*. (2013) 219 Cal.App.4th 75, 81 (*Siliga*).)

The trial court's ruling on a request for judicial notice is reviewed for abuse of discretion. (*Fontenot v. Wells Fargo Bank, N.A.* (2011) 198 Cal.App.4th 256, 264.) We read the complaint as containing the judicially noticeable facts, "'even when the pleading contains an express allegation to the contrary.' (*Chavez v. Times-Mirror Co*. (1921) 185 Cal. 20, 23.)" (*Cantu v. Resolution Trust Corp*. (1992) 4 Cal.App.4th 857, 877.)

Appealed judgments are presumed correct and the appellant's obligation is to affirmatively establish error. (*Hernandez v. California Hospital Medical Center* (2000)

15

78 Cal.App.4th 498, 502.) On appeal from a judgment of dismissal entered as the result of the trial court having sustained a demurrer, "[t]he plaintiff 'bears the burden of demonstrating that the trial court erroneously sustained the demurrer as a matter of law' and 'must show the complaint alleges facts sufficient to establish every element of [the] cause of action.' [Citation.]" (*Yan Sui v. Price* (2011) 196 Cal.App.4th 933, 938 (*Yan Sui* ).) "'"[A] complaint otherwise good on its face is subject to demurrer when facts judicially noticed render it defective." [Citation.]' (*Joslin v. H.A.S. Ins. Brokerage* (1986) 184 Cal.App.3d 369, 374; see Code Civ. Proc., § 430.30, subd. (a).)" (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 6.) "We must affirm the judgment if the sustaining of a general demurrer was proper on any of the grounds stated in the demurrer, regardless of the trial court's stated reasons." (*Siliga*, *supra*, 219 Cal.App.4th at p. 81.)

If the complaint is lacking, "we then consider whether the court abused its discretion in denying leave to amend the complaint." (*In re Estate of Dito* (2011) 198 Cal.App.4th 791, 800.) "'"[W]e decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff.' [Citation.]" (*Yan Sui*, *supra*, 196 Cal.App.4th at p. 939.) "The plaintiff can make that showing for the first time on appeal. [Citation.]" (*Siliga*, *supra*, 219 Cal.App.4th at p. 81.)

## B. Fraud

Plaintiffs contend the complaint states a cause of action for fraud against Telacu and Gross based on their statements to third parties. They argue that Telacu and Gross represented to the District, directly and through the Dannis defendants, that plaintiffs violated Government Code section 1090.

To state a fraud cause of action plaintiffs must allege: (1) a misrepresentation (a false representation, concealment or nondisclosure) as to a material fact; (2) knowledge

of its falsity or scienter; (3) intent to defraud; (4) justifiable reliance; and (5) resulting damage.  (*Robinson Helicopter Co., Inc. v. Dana Corp.* (2004) 34 Cal.4th 979, 990.)  "In California, fraud must be pled specifically; general and conclusory allegations do not suffice.  [Citations.]"  (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645 (*Lazar*).)  The heightened pleading standard for fraud requires "'pleading *facts* which "show how, when, where, to whom, and by what means the representations were tendered."'"  (*Ibid*.)  And, "'[a] plaintiff's burden in asserting a fraud claim against a corporate employer is even greater.  In such a case, the plaintiff must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written."'"  (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1614, quoting *Lazar*, at p. 645.)  The normal policy of liberally construing pleadings against a demurrer will not be invoked to sustain a fraud cause of action that fails to set forth such specific allegations.  (*Lazar*, *supra*, at p. 645.)

"[T]he elements of a cause of action for fraud based on concealment are:  '"(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage.  [Citation.]" [Citation.]' [Citation.]"  (*Kaldenbach v. Mutual of Omaha Life Ins. Co.* (2009) 178 Cal.App.4th 830, 850.)

Plaintiffs acknowledge their complaint does not allege a standard cause of action for fraud based on a misrepresentation made to plaintiffs or concealment of a material fact that Telacu and Gross had a duty to disclose to plaintiffs.  In their reply brief, they contend the claim is based on constructive fraud, but this is incorrect, because they do not allege Gross had a fiduciary or confidential relationship with them.

17

Constructive fraud applies to fiduciary or confidential relationships. (*Prakashpalan v. Engstrom, Lipscomb and Lack* (2014) 223 Cal.App.4th 1105, 1131.) "'Constructive fraud "arises on a breach of duty by one in a confidential or fiduciary relationship to another which induces justifiable reliance by the latter to his prejudice." [Citation.] Actual reliance and causation of injury must be shown. [Citation.]' (*Tyler v. Children's Home Society* (1994) 29 Cal.App.4th 511, 548, italics omitted; see also *Younan v. Equifax Inc*. (1980) 111 Cal.App.3d 498, 516, fn. 14 [elements of constructive fraud cause of action are '(1) a fiduciary or confidential relationship; (2) nondisclosure (breach of fiduciary duty); (3) intent to deceive, and (4) reliance and resulting injury (causation)'].) ""In its generic sense, constructive fraud comprises all acts, omissions and concealments involving a breach of legal or equitable duty, trust, or confidence, and resulting in damages to another. [Citations.] Constructive fraud exists in cases in which conduct, although not actually fraudulent, ought to be so treated—that is, in which such conduct is a constructive or quasi fraud, having all the actual consequences and all the legal effects of actual fraud.' [Citation.]"' (*Estate of Gump* (1991) 1 Cal.App.4th 582, 601; see Civ. Code, § 1573; *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 981-982, fn. 13.)" (*Prakashpalan v. Engstrom, Lipscomb and Lack*, *supra*, at p. 1131.)

Conceding that their allegations do not satisfy the standard elements of fraud, plaintiffs contend instead that they stated viable claim for fraud according to *Randi W. v. Muroc Joint Unified School Dist.* (1997) 14 Cal.4th 1066 (*Randi W.*). In *Randi W.*, a student who claimed a school employee sexually assaulted her sued the employee's prior employer. The complaint alleged causes of action for negligence, negligent misrepresentation and fraud based on the prior employer's recommendation letters that failed to disclose sexual misconduct charges and complaints made against the employee. (*Id.* at pp. 1072-1073.) The Supreme Court held that "defendants' letters of recommendation, containing unreserved and unconditional praise for former employee Gadams despite defendants' alleged knowledge of complaints or charges of his sexual

18

misconduct with students, constituted misleading statements that could form the basis for tort liability for fraud or negligent misrepresentation." (*Id.* at p. 1070.)

The court acknowledged that "no California case has yet held that one who intentionally or negligently provides false information to another owes a duty of care *to a third person* who did not receive the information and who has no special relationship with the provider." (*Randi W.*, *supra*, 14 Cal.4th at p. 1077.) Resolving the threshold question of duty, the court concluded that public policy considerations dictate that "the writer of a letter of recommendation owes to . . . third persons a duty not to misrepresent the facts in describing the qualifications and character of a former employee, if making these misrepresentations would present a substantial, foreseeable risk of physical injury to . . . third persons." (*Id.* at p. 1081.) The court further reasoned that, under these circumstances, the plaintiff need not show actual reliance on the letters; rather, "plaintiff need only allege that her injury resulted from action that *the recipient* of defendants' misrepresentations took in reliance on them." (*Id.* at p. 1085.)

In this case, the complaint does not allege any specific representation by Telacu or Gross. In their briefs on appeal, plaintiffs contend Gross represented to the Dannis defendants and the District that the plaintiffs' contracts violated Government Code section 1090. However, plaintiffs have not alleged the Dannis defendants, who are experienced attorneys, relied on Gross's representations in writing the letter to the plaintiffs stating that the contracts were void under California law. They have not alleged when Gross made representations to the District and when they learned Gross made representations to the District. The allegations are not sufficient to state a cause of action for fraud against Telacu or Gross.

### C. Statute of Limitations

Even if we were to conclude that the complaint states a cause of action for fraud based on representations to third parties, or could be amended to state such a cause of

19

action, we would still affirm the order sustaining the demurrer. This is so because the claim is barred by the statute of limitations.

The statute of limitations for fraud is three years. (§ 338, subd. (d).) "A limitations period begins to run when the cause of action accrues. [Citations.] The traditional common law rule is that a cause of action accrues at the time when the cause of action ""'is complete with all of its elements.'"" [Citations.] . . . The discovery rule is an exception to the traditional common law rule. Under the discovery rule, the accrual of a cause of action is delayed 'until the plaintiff discovers, or has reason to discover, the cause of action.' (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397 (*Norgart*).)" (*Pedro v. City of Los Angeles* (2014) 229 Cal.App.4th 87, 102-103.)

A plaintiff has reason to discover a cause of action when he or she "has reason at least to suspect a factual basis for its elements." (*Norgart*, *supra*, 21 Cal.4th at p. 398.) Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period. (*Id.* at p. 398, fn. 3.)

"The general rule is that the plaintiff's ignorance of the identity of a wrongdoer does not delay the accrual of a cause of action. (*Fox* [*v. Ethicon Endo-Surgery, Inc.* (2005)] 35 Cal.4th [797,] 807 [(*Fox*)]; *Bernson v. Browning-Ferris Industries* (1994) 7 Cal.4th 926, 932 [(*Bernson*)].) This is because the identity of the wrongdoer is not an element of the cause of action. (*Fox*, *supra*, at p. 807 ['the identity of the defendant is not an element of a cause of action']; *Norgart*, *supra*, 21 Cal.4th at p. 399 ['the identity of the defendant is not an element of any cause of action'].) The California Supreme Court in *Bernson* explained that this rule also is based on the assumption that the applicable limitations period normally affords sufficient time for a plaintiff who is aware of the injury to identify all of the wrongdoers. (*Bernson*, *supra*, at p. 932.)" (*Pedro v. City of Los Angeles*, *supra*, 229 Cal.App.4th at p. 103.)

"In order to rely on the discovery rule for delayed accrual of a cause of action, '[a] plaintiff whose complaint shows on its face that his claim would be barred without the benefit of the discovery rule must specifically plead facts to show (1) the time and

20

manner of discovery *and* (2) the inability to have made earlier discovery despite reasonable diligence.' [Citation.] In assessing the sufficiency of the allegations of delayed discovery, the court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not withstand demurrer.' [Citation.]" (*Fox*, *supra*, 35 Cal.4th at p. 808.)

"Simply put, in order to employ the discovery rule to delay accrual of a cause of action, a potential plaintiff who suspects that an injury has been wrongfully caused must conduct a reasonable investigation of all potential causes of that injury. If such an investigation would have disclosed a factual basis for a cause of action, the statute of limitations begins to run on that cause of action when the investigation would have brought such information to light. In order to adequately allege facts supporting a theory of delayed discovery, the plaintiff must plead that, despite diligent investigation of the circumstances of the injury, he or she could not have reasonably discovered facts supporting the cause of action within the applicable statute of limitations period." (*Fox*, *supra*, 35 Cal.4th at pp. 808-809.)

In this case, plaintiffs were aware that the Dannis defendants made representations in August 2009, on behalf of the District, that the contracts were void under Government Code section 1090. They were aware of the statements that form the basis of the instant fraud action more than three years prior to filing the instant action. Even if they were not aware of all the wrongdoers involved in making those representations, they were aware of the elements of the cause of action. The reason that a defendant had for making false statements is not an element of the cause of action. The cause of action began to accrue when the plaintiffs learned the Dannis defendants and the District made representations that the plaintiffs believed to be false, beginning in August 2009. The fraud cause of action is barred by the statute of limitations.

**D.  Intentional Interference with Contractual Relationship**

In plaintiffs' reply brief, for the first time, they request leave to amend their complaint to allege a cause of action for intentional interference with contractual relationship.  Even were this court to permit amendment, the cause of action would be barred by the statute of limitations.

In general, a cause of action for intentional interference with contract is governed by a two-year statute of limitations.  (§ 339, subd. 1; *Trembath v. Digardi* (1974) 43 Cal.App.3d 834, 836.)  When the interference claim is based on fraud, there is case law holding that the three-year statute of limitations applies.  (*Romano v. Wilbur Ellis & Co.* (1947) 82 Cal.App.2d 670 (*Romano*).)  In *Romano,* the plaintiff entered into a contract with a third party giving the plaintiff an exclusive right to sell fish and fish products to the third party.  The defendants falsely represented to the third party that the plaintiff was not fit or qualified to represent the third party, and the defendants could deal more profitably and advantageously with the third party.  Based on these representations, the third party terminated its contract with the plaintiff.  (*Id.* at pp. 671-672.)  The *Romano* court concluded the plaintiff had stated a cause of action for interference with contract. (*Id*. at pp. 672-673.)  The court also determined that the cause of action was subject to a three-year statute of limitations because "the gist of this type of action [was] fraud."  (*Id.* at p. 673.)

It is clear that a standard claim for intentional interference with contract is barred by the two-year statute of limitations in this case.  Plaintiffs cannot allege fraud with the requisite specificity to invoke the three-year statute of limitations.  Even if they could allege fraud with specificity, plaintiffs' questions in Goldberg's deposition evidenced a suspicion of Gross's relationship with Telacu, and his involvement in voiding the contract, no later than November 1, 2010, which would bar the cause of action based on fraud.  The plaintiffs request for leave to amend must be denied.

**Anti-SLAPP Motions**

### A. Standard of Review and Statutory Scheme

"Courts construe the anti-SLAPP statute broadly to protect the constitutional rights of petition and free speech. [Citations.] In ruling on an anti-SLAPP motion, the trial court conducts a two-part analysis: The moving party bears the initial burden of establishing a prima facie case that the plaintiff's cause of action arises from the defendant's free speech or petition activity, as defined in the anti-SLAPP statute. (§ 425.16, subds. (b)(1), (e); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) If the moving party meets its burden, the burden shifts to the plaintiff to establish a probability that he or she will prevail on the merits. (§ 425.16, subd. (b)(1); *Flatley v. Mauro* (2006) 39 Cal.4th 299, 314 (*Flatley*).)" (*Anderson v. Geist* (2015) 236 Cal.App.4th 79, 84.) "An anti-SLAPP suit motion is not a substitute for a demurrer or summary judgment motion." (*Lam v. Ngo* (2001) 91 Cal.App.4th 832, 851, fn. 12.)

"An appellate court independently reviews the trial court's order denying an anti-SLAPP motion. [Citation.] In our evaluation of the trial court's order, we consider the pleadings and the supporting and opposing affidavits filed by the parties on the anti-SLAPP motion. In doing so, we do not weigh credibility or determine the weight of the evidence. Rather, we accept as true the evidence favorable to the plaintiff and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law. [Citation.]" (*Bailey v. Brewer* (2011) 197 Cal.App.4th 781, 788.)

### B. Cause of Action for Fraud

Plaintiffs contend their cause of action for fraud is based on defendants' conduct in voiding the contract, not the civil and criminal proceedings that followed. Plaintiffs assert voiding the contract is not protected activity, and therefore, the anti-SLAPP statute

does not apply. We conclude the Board members and the attorney defendants showed the acts constituted protected activity, and plaintiffs did not establish a probability of prevailing as to any of the defendants.

A defendant meets its threshold burden of demonstrating that a cause of action arises from protected activity by showing that the act or acts underlying the claim fit one or more of the four categories described in section 426.16, subdivision (e). (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88.) These categories include "any written or oral statement or writing" that is "made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" (§ 425.16, subd. (e)(1)), "made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law" (*id*., subd. (e)(2)), or "made in a place open to the public or a public forum in connection with an issue of public interest" (*id*., subd. (e)(3)), as well as "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" (*id*., subd. (e)(4)).

"Thus, statements, writings and pleadings in connection with civil litigation are covered by the anti-SLAPP statute, and that statute does not require any showing that the litigated matter concerns a matter of public interest. [Citations.]" (*Rohde v. Wolf* (2007) 154 Cal.App.4th 28, 35.) Moreover, "communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation] . . . [and] such statements are equally entitled to the benefits of section 425.16. [Citation.]" (*Dove Audio, Inc. v. Rosenfeld, Meyer, & Susman* (1996) 47 Cal.App.4th 777, 784.) "[I]f a statement 'concern[s] the subject of the dispute' and is made 'in anticipation of litigation "contemplated in good faith and under serious consideration,"' [citations] then the statement may be petitioning activity protected by section 425.16." (*Neville v. Chudacoff* (2008) 160 Cal.App.4th 1255, 1268.) "In determining whether a statement was made in anticipation of litigation contemplated in good faith and under serious consideration, this court may look to how this test has been applied in cases involving the litigation privilege

24

of Civil Code section 47. [Citation.] Cases applying the litigation privilege have held that 'if the statement is made with *a good faith belief in a legally viable claim* and in serious contemplation of litigation, then the statement is sufficiently connected to litigation and will be protected by the litigation privilege. [Citation.]' [Citation.]" (*Bailey v. Brewer*, *supra*, 197 Cal.App.4th at p. 790.)

"One court has noted that the privilege 'arises at the point in time when litigation is no longer a mere possibility, but has instead ripened into a proposed proceeding that is actually contemplated in good faith and under serious consideration as a means of obtaining access to the courts for the purpose of resolving the dispute.' (*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 39 (*Edwards*).) A later case noted that '*Edwards* does not hold or suggest that a complaint must be drafted before the privilege will apply.' [Citation.]" (*Rohde v. Wolf*, *supra*, 154 Cal.App.4th at p. 36.)

"'"[A] plaintiff cannot frustrate the purposes of the SLAPP statute through a pleading tactic of combining allegations of protected and nonprotected activity under the label of one 'cause of action.'" [Citation.] Conversely, a defendant in an ordinary private dispute cannot take advantage of the anti-SLAPP statute simply because the complaint contains some references to speech or petitioning activity by the defendant. [Citation.] [Thus] it is the *principal thrust* or *gravamen* of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies [citation], and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute.' [Citation.]" (*Raining Data Corp. v. Barrenechea* (2009) 175 Cal.App.4th 1363, 1369.) Additionally, "a plaintiff cannot avoid operation of the anti-SLAPP statute by attempting, through artifices of pleading, to characterize an action as a *garden variety* tort claim when in fact the liability claim is predicated on protected speech or conduct. [Citation.]" (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 519.)

In this case, the District's attorneys sent the letter dated August 13, 2009, stating the contracts were void for violation of California's conflict of interest laws and

demanding repayment of all the sums paid under the contracts. Within two weeks, plaintiffs filed a lawsuit for declaratory relief and the District had filed a cross-complaint to have the contracts declared void and payments under the contracts returned. We agree with the trial court that when the District's attorneys made the statements in the August 13, 2009 letter, litigation was actually contemplated in good faith and under serious consideration. Therefore, the activity was protected.

The burden shifted to plaintiffs to show a probability of prevailing on the merits. The plaintiffs did not submit any admissible evidence to establish a probability of prevailing, and as discussed above, the action was barred by the statute of limitations.

### C. Malicious Prosecution

It is undisputed that plaintiffs' cause of action against the Dannis and Quinn defendants for malicious prosecution is based on protected activity. Plaintiffs contend they can establish the attorney defendants prosecuted the underlying criminal action without probable cause. They acknowledge that Christiansen's conviction in the criminal proceedings is an interim adverse ruling that would establish probable cause as a matter of law, but they contend an exception applies for a conviction procured by fraud, perjury or subornation of perjury, or other unfair conduct on the part of the defendants.

"To establish a cause of action for malicious prosecution, a plaintiff must plead and prove that the underlying action was (1) commenced by or at the direction of the defendant and pursued to a legal termination in the plaintiff's favor; (2) brought without probable cause; and (3) initiated with malice." (*Plumley v. Mockett* (2008) 164 Cal.App.4th 1031, 1047.)

The court determines the issue of probable cause. (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 874-877 (*Sheldon Appel*).) The test for determining probable cause is "whether any reasonable attorney would have thought the claim tenable." (*Id*. at p. 886.) Under the interim adverse judgment rule, certain nonfinal rulings on the merits may establish probable cause for prosecuting the underlying case.

26

(*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 817-818.)  However, an interim ruling obtained by fraud or perjury does not establish probable cause.  (*Ibid.*)  Simply showing the plaintiff or attorney discounted contrary evidence in the underlying action is not fraud or perjury.  "[T]he fraud exception requires "'knowing use of false and perjured testimony.""'"  (*Antounian v. Louis Vuitton Malletier* (2010) 189 Cal.App.4th 438, 452.)

In this case, the plaintiffs did not submit any admissible evidence in opposition to the anti-SLAPP motion that showed any of the attorneys knowingly used false and perjured testimony or took other actions constituting fraud as to the underlying criminal case.  The plaintiffs did not establish a probability of prevailing on the issue of whether the criminal conviction was obtained through fraud or perjury.

## Attorney Fees Motions

### A.  Fee Awards to Board Members and Dannis Defendants

Plaintiffs contend the amount of attorney fees awarded to the Board members and the Dannis defendants was excessive.  However, plaintiffs' notice of appeal was premature with respect to the postjudgment orders awarding attorney fees and costs to the Board members and the Dannis defendants.  The premature appeal, made prior to the calculation of the amount of attorney fees, must be dismissed as to the fee amounts.  (*Silver v. Pacific American Fish Co., Inc.* (2010) 190 Cal.App.4th 688, 691; *First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 960-961.)

Even if we had discretion to consider the appeal from the attorney fee awards, we would affirm.  "'"We review the amount of attorney fees awarded for abuse of discretion.  [Citation.]  A trial court's attorney fee award will not be set aside "absent a showing that it is manifestly excessive in the circumstances." [Citation.]' [Citation.]"  (*Lunada Biomedical v. Nunez* (2014) 230 Cal.App.4th 459, 487.)  Plaintiffs do not show any abuse of discretion in the amounts awarded.

27

**B. Denial of Quinn Defendants' Motion for Attorney Fees**

The Quinn defendants contend their motion for attorney fees should have been granted, because the District will have to pay the fees under their indemnification agreement with the District. We disagree.

"'The issue of a party's entitlement to attorney's fees is a legal issue which we review de novo.' [Citations.] [¶] Under the anti-SLAPP statute, 'a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs.' (Code Civ. Proc., § 425.16, subd. (c)(1).) An exception to this fee-shifting provision applies to self-represented attorneys. (*Trope v. Katz* (1995) 11 Cal.4th 274 (*Trope*).)" (*Ellis Law Group, LLP v. Nevada City Sugar Loaf Properties, LLC* (2014) 230 Cal.App.4th 244, 252-253 (*Ellis*).)

"In *Trope*, the California Supreme Court held a law firm was not entitled to attorney fees after it successfully represented itself against a client who brought a breach of contract claim. ([*Trope*, *supra*, 11 Cal.4th] at pp. 279, 292.) Even though the contract in *Trope* contained a fee-shifting provision and Civil Code section 1717 permits the recovery of reasonable attorney fees incurred to enforce a contract with a fee-shifting clause, the court concluded the law firm had not incurred attorney fees in representing itself. (*Trope*, *supra*, at p. 292.) The *Trope* court reasoned that an 'attorney who chooses to litigate in propria persona' by that choice 'does not pay or become liable to pay consideration in exchange for legal representation.' (*Ibid.*) Self-represented attorneys are not 'obligated to *pay*' for their legal fees even if they have expended their time and lost other business opportunities. (*Id*. at p. 280.) In reaching this conclusion, *Trope* noted well-settled case law construed 'reasonable attorney's fees' not to include fees for time spent by self-represented attorneys. (*Id.* at pp. 281-282.)" (*Ellis*, *supra*, 230 Cal.App.4th at p. 253.)

"The *Trope* court reasoned that 'when it enacted [Civil Code] section 1717 the Legislature did not intend to allow doctors, architects, painters, or any other nonattorneys to receive compensation for the valuable time *they* spend litigating a contract matter on

28

their own behalf. [Citations.] Therefore, to [award attorney fees] in this context would be to hold that the time and opportunity that an attorney gives up when he [or she] chooses to litigate a case in propria persona are somehow qualitatively more important and worthy of compensation than those of other pro se litigants. There is no support in either the language or legislative history of [Civil Code] section 1717 for such disparate treatment of pro se litigants on the basis of their occupations.' (*Trope*, *supra*, 11 Cal.4th at p. 285.)" (*Ellis*, *supra*, 230 Cal.App.4th at p. 253.)

"In *Witte v. Kaufman* (2006) 141 Cal.App.4th 1201 (*Witte*), this court followed *Trope*, *supra*, 11 Cal.4th 274, to hold self-represented attorneys who successfully move for dismissal of an action under the anti-SLAPP statute may not recover fees for their time. (*Witte*, *supra*, at p. 1208.) *Witte* involved a claim for attorney fees based on the work provided by three attorneys on behalf of their law firm of Knox, Lemmon & Anapolsky (KLA). (*Id*. at pp. 1203, 1210.) KLA argued it was not self-represented, but represented by three attorneys at the firm. (*Id*. at p. 1210.)" (*Ellis*, *supra*, 230 Cal.App.4th at p. 253.)

"As we explained, '[w]here an attorney-client relationship exists, the courts uniformly allow for the recovery of attorney fees under Civil Code section 1717. [Citations.] [¶] Cases that have allowed the recovery of attorney fees under the anti-SLAPP statute are similarly marked by the existence of an attorney-client relationship. [Citations.] [¶] This decisional authority and the plain language of section 425.16, subdivision (c) supports the conclusion that the commonly understood definition of attorney fees [as determined in *Trope*] applies with equal force to section 425.16 and a prevailing defendant is entitled to recover attorney fees if represented by counsel.' (*Witte, supra,* 141 Cal.App.4th at p. 1208, quoting *Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 524.)" (*Ellis*, *supra*, 230 Cal.App.4th at pp. 253-254.)

The fact that the Quinn defendants have an agreement with the District that provides for indemnification in this situation does not change the fact that the Quinn defendants did not hire counsel and incur fees for their representation in this action. The

29

District is not a party in this action and did not file a successful anti-SLAPP motion. The Quinn defendants are not entitled to an award of fees.

**DISPOSITION**

The judgment is affirmed. Defendants Jerry Gross, Telacu Industries, Inc., Brian Goldberg, Myra Lurie, Myra Demeter, Lisa Korbatov, Dannis Wolliver Kelley, Sue Ann Salmon Evans, Brian Duus, Marilyn J. Cleveland, Quinn Emanuel Urquhart & Oliver, Steven G. Madison, Michael T. Lifrak, and Michael Galvin are awarded their costs with respect to the appeal from the judgment.

The postjudgment order denying an award of attorney fees to the Quinn defendants is also affirmed. Plaintiffs Karen Christiansen and Strategic Concepts, LLC, are awarded their costs on appeal with respect to the postjudgment order denying fees.

KRIEGLER, J.

We concur:

MOSK, Acting P. J.

BAKER, J.

30