Filed 4/17/23; Modified and Certified for Pub. 5/5/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CHILDHELP, INC., | B311945 |
| Plaintiff and Appellant, | (Los Angeles County |
| v. | Super. Ct. No. BC711998) |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

      APPEAL from judgment of the Los Angeles County Superior Court, Teresa A. Beaudet, Judge.  Affirmed.

      Beitchman & Zekian, David P. Beitchman and Paul Tokar for Plaintiff and Appellant.

      Michael N. Feuer and Hydee Feldstein Soto, City Attorneys, Timothy McWilliams and Peter Walford, Deputy City Attorneys, for Defendant and Respondent.

# INTRODUCTION

In 1986 Childhelp, Inc., a nonprofit corporation that provides services to victims of child abuse, leased real property from the City of Los Angeles. The lease provided that, in lieu of paying rent, Childhelp would provide treatment for child abuse victims and that after 20 years the City would consider conveying the property to Childhelp.

In 2014 the Los Angeles City Council passed a resolution directing various City departments and officials to prepare and execute the necessary approvals and agreements to convey the property to Childhelp, in exchange for Childhelp's agreement to continue using the property to provide services for victims of child abuse. Ultimately, however, the City decided not to transfer the property to Childhelp.

Childhelp filed this action against the City for, among other things, declaratory relief, writ of mandate, and promissory estoppel, and the City filed an unlawful detainer action against Childhelp. After the trial court consolidated the two actions, the court granted the City's motion for summary adjudication on Childhelp's cause of action for promissory estoppel, sustained without leave to amend the City's demurrer to Childhelp's causes of action for declaratory relief and writ of mandate, and granted the City's motion for summary judgment on its unlawful detainer complaint. Childhelp appeals from the ensuing judgment. We affirm.

## FACTUAL AND PROCEDURAL SUMMARY

A. *Childhelp Leases Property from the City*

Childhelp began leasing property from the City in March 1986. Three years later, the parties entered into a three-year lease with "the intent" that the City would "renew the lease in increments of three (3) years for a maximum of twenty (20) years." The parties agreed that, instead of paying rent, Childhelp would "use the premises for the provision of services to abused and/or neglected children and their families and purposes incidental thereto." The lease also stated that, after 20 years, the City Council would "consider conveying its interest in the property" to Childhelp if it "satisfactorily complied with the terms and conditions of" the lease. For the next 20 years, Childhelp provided services as required by the lease and, after the lease expired in 2009, continued to occupy the premises as a month-to-month holdover tenant "upon the same terms, consideration, covenants and conditions" in the lease.

The City Council, as required by the lease, considered conveying the property and in July 2014 passed a resolution adopting recommendations by two committees to convey the property to Childhelp. Among other things, the resolution asked "the City Attorney to work with the Los Angeles Housing and Community Investment Department (HCIDLA) and the Department of General Services (GSD) to prepare and execute the necessary agreements to convey the property" to Childhelp and to "record a covenant to ensure the continuation of services for victims of child abuse"; authorized "HCIDLA and GSD, with the assistance of the City Attorney, to execute all necessary approvals, documents, and amendments to transfer ownership of"

3

the property to Childhelp; directed "GSD, City Attorney and any other necessary departments to commence the process for a direct sale of" the property to Childhelp; declared the property was "a surplus asset"; directed "GSD to immediately initiate the Surplus Property Process and conduct a Class 'A' appraisal"; directed "the City Administrative Officer (CAO) to prepare a report on the direct sale to Childhelp"; and directed "GSD, with the assistance of the City Attorney, to take all necessary steps and prepare all required documents to effectuate the direct sale of the Property to Childhelp." The resolution did not provide a timeline for the sale or include instructions on how the various municipal entities and officials were to complete these tasks.

Pursuant to the resolution, GSD sent notices to City departments informing them of the proposed sale of the City-owned property and asking if there were any objections to the sale.[1] Some of the letters included language stating the City "intends to offer for possible sale the property" Childhelp was occupying. The City obtained an appraisal, which valued the property at $2.2 million as of January 9, 2015. In analyzing the request to convey City-owned property at below market value, the CAO performed a "Community Benefits Analysis," which compared the fair market value of the property to the value of services Childhelp would provide to the community. After

---

[1] GSD sent letters to, among other agencies and departments, the Real Estate Division, Economic and Workforce Development Department, Department of Recreation and Parks, Department of Transportation, Fire and Police Pensions, Housing Authority, Los Angeles River Revitalization Corporation, Los Angeles City Employees' Retirement System, Los Angeles County Metropolitan Transportation Authority, Santa Monica Mountains Conservancy, and California State Resources Agency.

4

completing this analysis the CAO recommended the City require Childhelp to continue providing services at the location for 20 years. Childhelp initially objected to any such requirement and took the position there should not be any covenant, but eventually offered to continue providing services at the location for "a minimum of an additional 10 years." The parties negotiated but never reached an agreement on the duration of a covenant that would require Childhelp to continue providing services to child abuse victims on the property.

In the spring of 2016 HCIDLA became concerned about low client enrollment at Childhelp's facility on the property. After the parties met in March and August 2016, HCIDLA sent Childhelp a letter in January 2017 stating that the City had determined Childhelp was providing minimal services at the facility on the property and that the types of programs and services Childhelp was providing did not comply with the terms of the lease. In particular, HCIDLA found that Childhelp was not putting "the City-owned leased facility to its highest and best use in the delivery of contracted services to the low- and moderate-income children and families of Los Angeles"; that Childhelp was providing foster services to children in a residential program in Beaumont, California, a Childhelp facility in Riverside County; and that Childhelp was not conducting foster parent training programs at the facility. HCIDLA recommended that the City reconsider transferring the property to Childhelp pending the outcome of the CAO's community benefits analysis or, in the alternative, that the City not transfer the property because doing so "would not inure a benefit to the community and the city of Los Angeles." Childhelp disputed HCIDLA's findings Childhelp was violating the lease, and in

5

June 2018 the City served Childhelp with a 30-day notice terminating the tenancy.

B.    *Childhelp Sues the City*

Four years after the City Council passed the July 2014 resolution, the City had still not conveyed the property to Childhelp. In July 2018 Childhelp sued the City, alleging in its second amended complaint two causes of action for declaratory relief (one relating to the City Council's resolution and one relating to the 1989 lease), one cause of action for quiet title, and a cause of action for promissory estoppel. In its promissory estoppel cause of action Childhelp alleged that the City made "promises and representations [that] are contained within the [lease] whereby the City agrees to consider transferring title to the Property after twenty years to Childhelp" and that, "[i]n furtherance of its promises as set forth in the [lease], on or around July 2, 2014 the City Council determined that the Property should be transferred and directed the City of Los Angeles to transfer title to the Property to Childhelp." Childhelp alleged it reasonably relied on the City's promises to its detriment because for over 30 years it continued to occupy and maintain the property. In addition, Childhelp alleged that it refrained from looking for an alternative property "when the real estate market in Los Angeles was not at its peak" and that, "[b]y comparison, real estate prices have increased an average of 25% between 2014 and 2018 in and around Los Angeles."

The City and Childhelp filed cross-motions for summary judgment or in the alternative for summary adjudication on all four causes of action in the second amended complaint. The trial court denied Childhelp's motion in its entirety and denied the

6

City's motion for summary adjudication on Childhelp's first and second causes of action for declaratory relief. The court granted the City's motion for summary adjudication on Childhelp's third cause of action for quiet title (a ruling Childhelp does not challenge) and fourth cause of action for promissory estoppel. On the promissory estoppel cause of action, the court identified two alleged promises by the City: the promise in the lease "to consider" transferring the property to Childhelp and the promise in the resolution to actually transfer the property to Childhelp. The court ruled that it was undisputed the City made these promises (and actually considered transferring the property), but that there were triable issues of material fact regarding Childhelp's reasonable reliance on the promises and its resulting detriment. The court nevertheless granted the City's motion for summary adjudication on the promissory estoppel cause of action because the court concluded that applying promissory estoppel would contravene requirements in the Los Angeles City Charter for the sale of real property owned by the City.

After the trial court's summary judgment rulings, Childhelp amended its complaint two more times. In its fourth and final amended complaint, Childhelp alleged three causes of action: for declaratory relief relating to the 2014 resolution, for declaratory relief relating to the 1989 lease, and for writ of mandate. Regarding the declaratory relief cause of action relating to the 2014 resolution, Childhelp alleged there was an "actual controversy" between the parties "as to their respective rights and interests as it applies to the Los Angeles City Council's July 2014 written directive . . . as it relates to title to the Property and whether the City of Los Angeles is required to transfer title to the Property to Childhelp . . . ." Childhelp stated

7

it was seeking "a judicial determination regarding those respective rights and interests in the ownership and title to the Property, stemming from the July 2, 2014 City Council written Resolution." Regarding the declaratory relief cause of action relating to the 1989 lease, Childhelp sought an adjudication of its rights under the lease, including title to and ownership of the property and the scope of services Childhelp had to provide under the lease. Regarding its cause of action for writ of mandate, Childhelp alleged the City failed to fulfill its "clear, mandatory duty to comply with the July 2, 2014 Resolution which directed the City of Los Angeles to prepare and execute the necessary documents to transfer title to the Property to Childhelp." Childhelp alleged that it had no available administrative remedies or an adequate remedy at law and that it would be harmed if the City continued with "its ongoing eviction proceedings and further attempts to recapture the Property."

The City demurred to the fourth amended complaint. The trial court overruled the demurrer to the declaratory relief action relating to the 1989 lease agreement and sustained without leave to amend the demurrer to the declaratory relief action relating to the resolution and the cause of action for writ of mandate.[2] The court ruled the resolution could not have transferred ownership of the property to Childhelp because the City can only transfer City-owned property by ordinance, and Childhelp did not allege there ever was such an ordinance. The court concluded that any resolution, including the 2014 resolution, "that purports to sell City property is void because sale of City property may only be effected by ordinance" and that, because it was void, the 2014

---

[2] Childhelp subsequently dismissed its cause of action for declaratory relief relating to the 1989 lease agreement.

resolution "cannot form the basis for a contractual obligation on the part of the City to sell the Property to Childhelp." The court also ruled that, "in order for the acts set forth in the Resolution to be considered purely ministerial, there had to be some language that directed the passage of an ordinance for the sale of the Property to Childhelp." Because the resolution did not include this language, the court concluded, Childhelp had not exhausted its administrative remedies.

C.     *The City Prevails in Its Unlawful Detainer Action*

Three months after Childhelp sued the City, the City filed an unlawful detainer action against Childhelp, alleging that the lease had expired on March 10, 2009 and that Childhelp was a month-to-month holdover tenant. In February 2019 the trial court consolidated Childhelp's action and the City's unlawful detainer action.

After the trial court sustained the City's demurrer to the fourth amended complaint without leave to amend, the trial court granted a motion by the City for summary judgment on its unlawful detainer complaint. The court stated it had ruled in favor of the City on Childhelp's declaratory relief causes of action. Treating the unlawful detainer action as alleging a cause of action for ejectment, the court ruled the City, as the owner of title to the property, demonstrated a superior right to possession.

On March 29, 2021 the trial court entered judgment in the consolidated action. Childhelp timely appealed.[3]

---

[3]     Childhelp mistakenly checked the box on the notice of appeal stating it was appealing from an order after judgment. There were no postjudgment orders between the March 29, 2021

9

**DISCUSSION**

A.   *The Trial Court Did Not Err in Sustaining the City's Demurrer to Childhelp's Causes of Action for Declaratory Relief and Petition for Writ of Mandate*

1.   *Applicable Law and Standard of Review*

A demurrer tests the legal sufficiency of a complaint. (*City of Coronado v. San Diego Assn. of Governments* (2022) 80 Cal.App.5th 21, 35.) "In an appeal from a judgment following an order sustaining a demurrer without leave to amend, we first review de novo 'whether the complaint states facts sufficient to constitute a cause of action.'" (*Jane Doe No. 1 v. Uber Technologies, Inc.* (2022) 79 Cal.App.5th 410, 419; see *City of Oakland v. Oakland Raiders* (2022) 83 Cal.App.5th 458, 472.) "'"[W]e accept as true all material facts alleged in the complaint, but not contentions, deductions or conclusions of fact or law. We also consider matters that may be judicially noticed."'" (*City of Coronado*, at p. 35; see *City of Oakland*, at p. 472.)

---

judgment and the April 1, 2021 notice of appeal. We liberally construe the notice of appeal to be from the March 29, 2021 judgment. (See *K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 882 ["'"notices of appeal are to be liberally construed so as to protect the right of appeal if it is reasonably clear what [the] appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced"'"]; *Ellis Law Group, LLP v. Nevada City Sugar Loaf Properties, LLC* (2014) 230 Cal.App.4th 244, 251 [checking the wrong box on a notice of appeal "is not fatal to the appeal"].)

We review questions of statutory interpretation de novo. (*Lopez v. Ledesma* (2022) 12 Cal.5th 848, 857.)  The same is true for local ordinances and municipal codes (*Tran v. County of Los Angeles* (2022) 74 Cal.App.5th 154, 162) and city charters (*Sieg v. Fogt* (2020) 55 Cal.App.5th 77, 88).

"If the court sustained the demurrer without leave to amend, . . . we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment. [Citation.]  If we find that an amendment could cure the defect, we conclude that the trial court abused its discretion and we reverse; if not, no abuse of discretion has occurred.  [Citation.] The plaintiff has the burden of proving that an amendment would cure the defect." (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081; see *Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100.)  "'"While such a showing can be made for the first time to the reviewing court [citation], it must be made."'" (*Nealy v. County of Orange* (2020) 54 Cal.App.5th 594, 608.)

> 2. *The Trial Court Did Not Err in Sustaining the City's Demurrer to Childhelp's Cause of Action for Declaratory Relief*

Section 1060 of the Code of Civil Procedure provides:  "Any person interested under a written instrument . . . or who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action . . . for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument . . . ."  To allege facts

11

sufficient to state a cause of action for declaratory relief, the plaintiff must allege "two essential elements: '(1) a proper subject of declaratory relief, and (2) an actual controversy involving justiciable questions relating to the rights or obligations of a party.'" (*Lee v. Silveira* (2016) 6 Cal.App.5th 527, 546.)

"It is the general rule that in an action for declaratory relief the complaint is sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties . . . and requests that the rights and duties be adjudged. [Citation.] If these requirements are met, the court must declare the rights of the parties whether or not the facts alleged establish that the plaintiff is entitled to a favorable declaration." (*Bennett v. Hibernia Bank* (1956) 47 Cal.2d 540, 549-550; accord, *Nede Mgmt. Inc. v. Aspen American Ins. Co.* (2021) 68 Cal.App.5th 1121, 1130-1131.) "'[A] general demurrer is usually not an appropriate method for testing the merits of a declaratory relief action, because the plaintiff is entitled to a declaration of rights even if it is adverse to the plaintiff's interest.'" (*Qualified Patients Assn. v. City of Anaheim* (2010) 187 Cal.App.4th 734, 751.)

Nevertheless, "a trial court may properly sustain a general demurrer to a declaratory relief action without leave to amend when . . . the controversy presented can be determined as a matter of law." (*City of Fresno v. California Highway Com.* (1981) 118 Cal.App.3d 687, 699; see *Nede Mgmt. Inc. v. Aspen American Ins. Co., supra,* 68 Cal.App.5th at p. 1131 [court may sustain a demurrer to a declaratory relief cause of action "when it is clear the plaintiff seeks a declaration of rights to which he or she is not legally entitled"]; *Jefferson, Inc. v. Torrance* (1968)

12

266 Cal.App.2d 300, 303 ["where a complaint sets forth a good cause of action for declaratory relief regarding only a disputed question of law, declarations on the merits unfavorable to a plaintiff have been upheld although such determinations were made in the form of a judgment sustaining a demurrer"].) Allowing the plaintiff to proceed on a cause of action for declaratory relief "can often lead to a waste of court and litigant resources when it is clear the plaintiff seeks a declaration of rights to which he or she is not legally entitled.  It would seem unnecessary to reverse a judgment sustaining a demurrer simply because an 'actual controversy' has been alleged.  [Citation.] Although the sustaining of the demurrer might be technically incorrect, reversing 'would merely provoke further appellate recourse since the record discloses that the trial court dismissed the case on the merits and the legal issues are clearly presented by the pleadings.'" (*Nede Mgmt.*, at p. 1131.)[4]

Childhelp contends it alleged an actual controversy between the parties about whether the City Council's resolution required the City to transfer the property to Childhelp.  The City argues the resolution did not transfer and could not have transferred title of the property to Childhelp as a matter of law because the resolution did not meet the requirements in the City Charter to sell City-owned property.

The City is a charter city (Cal. Const., art. XI, § 3; L.A. City Charter, § 100.) with "'maximum allowable control over [its]

---

[4]     Childhelp does not argue the trial court erred in sustaining the City's demurrer to the cause of action for declaratory relief because such a cause of action is not subject to demurrer.

13

municipal affairs,'" including the power to enter into contracts. (*Michael Leslie Productions, Inc. v. City of Angeles* (2012) 207 Cal.App.4th 1011, 1021, 144; see *First Street Plaza Partners v. City of Los Angeles* (1998) 65 Cal.App.4th 650, 661 (*First Street Plaza Partners*).)  "It is well settled that when a municipal charter contains an express limitation upon the mode in which the city may contract, the city is bound only by contracts executed in accordance with the charter provisions; in other words, where the statute provides the only mode by which the power to contract shall be exercised, the mode is the measure of the power."  (*Dynamic Industries Co. v. Long Beach* (1958) 159 Cal.App.2d 294, 298-299; see *Domar Electric, Inc. v. City of Los Angeles* (1994) 9 Cal.4th 161, 171 ["a charter city may not act in conflict with its charter," and any "act that is violative of or not in compliance with the charter is void"]; *Los Angeles Dredging Co. v. City of Long Beach* (1930) 210 Cal. 348, 353 ["the mode of contracting, as prescribed by the municipal charter, is the measure of the power to contract; and a contract made in disregard of the prescribed mode is unenforceable"].)  Thus, the City can only enter into a binding contract in a way that complies with the City Charter.  (See *First Street Plaza Partners*, at p. 671.)

The City Charter and the City's Administrative Code prescribe the procedures for selling City-owned property. Section 385 of the City Charter, titled "Sale of City Property," states in relevant part, "Any real or personal property owned by the City that is no longer needed may, subject to the limitations elsewhere prescribed in the Charter, be sold under terms and conditions prescribed by ordinance."  Section 370 of the City Charter requires that "[e]very contract involving consideration

14

reasonably valued at more than an amount specified by ordinance shall . . . be made in writing, or other manner as provided by ordinance," and signed by the mayor or other authorized personnel.  Section 370 provides that the City "shall not be, and is not, bound by any contract unless it complies with the requirements of this section and all other applicable requirements of the Charter."

The Administrative Code prescribes the procedure for selling real property the City no longer needs.  Among other requirements, various City departments must submit recommendations to the City Council, including the CAO's opinion on the propriety of the sale and GSD's recommendation on minimum sale price.  (L.A. Admin. Code, § 7.22, subds. (a) & (d).)  The Administrative Code generally requires that "every contract involving consideration reasonably valued at more than $5,000 . . . shall be made in writing or other manner as provided by ordinance" and approved by the City Attorney as to form.  (L.A. Admin. Code, § 10.2.)

Childhelp sought a declaration that the 2014 resolution, without more, transferred the property.  But more was required to sell City property.  Childhelp did not allege, nor can it allege, the City complied with the requirements in the City Charter and Administrative Code for contracting and selling real property.  There is no ordinance prescribing the terms and conditions of the sale or a written contract signed by the mayor or  other authorized personnel and approved by the City Attorney.  Nor does Childhelp claim there is.  Instead, acknowledging the sale of City-owned property requires an ordinance, Childhelp argues that, "[e]ven if [the] City is required to enact an ordinance which complies with the terms of the Resolution after it acts as directed

15

in the Resolution, Childhelp is not precluded from alleging a declaratory relief claim regarding the actions that the City is required to take to effectuate the transfer of the Property." That, however, was not the relief Childhelp sought in its fourth amended complaint. As discussed, Childhelp sought a declaration the City had to transfer title to the property, not a declaration of the actions the City needed to take to effectuate the transfer of title.

And the 2014 resolution was not enough. As the court explained in *San Diego City Firefighters, Local 145 v. Board of Administration Etc.* (2012) 206 Cal.App.4th 594, there is a "substantial difference between a resolution and an ordinance: [A] resolution. . . is ordinarily not equivalent to an ordinance. A resolution is usually a mere declaration with respect to future purpose or proceedings. . . . An ordinance is a local law which is adopted with all the legal formality of a statute. A resolution adopted without the formality required of an ordinance cannot be deemed an ordinance. Resolution denotes something less formal. It is the mere expression of the opinion of the legislative body concerning some administrative matter for the disposition of which it provides. Ordinarily it is of a temporary character, while an ordinance prescribes a permanent rule of conduct or of government." (*Id.* at pp. 607-608, internal quotation marks and citations omitted.) The City's resolution was not an ordinance or a contract. (See *City of Brentwood v. Department of Finance* (2020) 54 Cal.App.5th 418, 434 ["resolutions are not agreements"].) Childhelp's declaratory relief cause of action fails as a matter of law.[5]

---

[5] Childhelp does not argue the trial court abused its discretion in sustaining the demurrer without leave to amend.

16

3. *The Trial Court Did Not Err in Sustaining the City's Demurrer to Childhelp's Cause of Action for Writ of Mandate*

"A writ of mandate may be issued by any court . . . to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . ." (Code Civ. Proc., § 1085, subd. (a); see *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 868.) "In order to obtain writ relief, a party must establish "'(1) A clear, present and usually ministerial duty on the part of the respondent . . .; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty . . . .'"" (*City of Dinuba*, at p. 868; see *Bull Field, LLC v. Merced Irrigation Dist.* (2022) 85 Cal.App.5th 442, 451-452.) "A ministerial act is one that a public functionary is required to perform in a prescribed manner in obedience to the mandate of legal authority, without regard to his or her own judgment or opinion concerning the propriety of such act." (*Collins v. Thurmond* (2019) 41 Cal.App.5th 879, 914, internal quotation marks omitted; see *Monterey Coastkeeper v. Central Coast Regional Water Quality Control Bd.* (2022) 76 Cal.App.5th 1, 19.)

Mandate, however, "'will not issue if the duty is . . . mixed with discretionary power.'" (*Coast Community College Dist. v. Commission on State Mandates* (2022) 13 Cal.5th 800, 815.) Even if ""'mandatory language appears in [a] statute creating a duty, the duty is discretionary if the [public entity] must exercise significant discretion to perform the duty.'"" (*Grosz v. California Department of Tax & Fee Administration* (2023) 87 Cal.App.5th 428; see *AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 701;

17

*Sonoma Ag Art v. Department of Food & Agriculture* (2004) 125 Cal.App.4th 122, 127.)  Whether a statute or ordinance (or, here, a resolution) imposes "a ministerial duty, for which mandamus will lie, or a mere obligation to perform a discretionary function is a question of statutory interpretation." (*California Public Records Research, Inc. v. County of Yolo* (2016) 4 Cal.App.5th 150, 178; see *Lateef v. City of Madera* (2020) 45 Cal.App.5th 245, 253 ["The rules of statutory construction applicable to statutes are also applicable to municipal ordinances."]; *County of Humboldt v. McKee* (2008) 165 Cal.App.4th 1476, 1489 ["[t]he interpretation of local ordinances and resolutions is subject to ordinary rules of statutory construction"].)  In the context of a request for "mandamus relief, where statutory interpretation is required, the question of whether an agency has an enforceable ministerial duty under a local ordinance is treated as an issue of law, subject to de novo review."  (*Anthony v. Snyder* (2004) 116 Cal.App.4th 643, 659.)

Childhelp sought a writ of mandate compelling the City "to prepare and execute the necessary documents to transfer title to the Property to Childhelp," as stated in the resolution.  Among other things, the resolution instructed the City Attorney to work with several municipal departments to prepare and execute the necessary documentation to convey the property to Childhelp and to record a covenant that would ensure Childhelp continued to use the property to provide services to victims of child abuse.  The resolution also directed various other departments and officers to analyze and report on the proposed sale and prepare additional documentation.

18

The tasks described in the resolution were not ministerial. "A discretionary act requires ""personal deliberation, decision and judgment,"" whereas a ministerial act consists of performing ""a duty in which the officer is left no choice of his own."""" (*Roger v. County of Riverside* (2020) 44 Cal.App.5th 510, 528.) Although the resolution directed certain City officers and departments to take certain actions, it did not specify how these actions should be carried out. (See *AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health*, *supra*, 197 Cal.App.4th at p. 702 [writ relief was not available where, though the statute generally directed health officers to prevent the spread of contagious diseases, it was "unlikely that the Legislature intended for the health officer's mandatory duty to be carried out in a specific manner"].) For example, as discussed, one of the most significant terms of the proposed sale of the property was a covenant that would require Childhelp to continue providing services to victims of child abuse. But the resolution did not specify the nature or length of this covenant, and the parties never reached an agreement on this term. The resolution's silence on this key point delegated the issue to various officers and departments to determine and propose (for the CAO, in a report) a suitable duration. (See L.A. Admin. Code, § 7.22, subd. (d) ["In cases involving the direct sale of surplus City-owned property . . . the City Administrative Officer shall review the proposed direct sale and recommend to the Council upon its propriety."].) In preparing a recommendation, the CAO would necessarily have to exercise "personal deliberation, decision and judgment."[6]

---

[6] Although not relevant at the pleading stage, the evidence at summary judgment was that the CAO, after analyzing the fair

19

*Transdyn/Cresci JV v. City and County of San Francisco* (1999) 72 Cal.App.4th 746, relied on by Childhelp, involved a very different situation. In that case the Public Utilities Commission of the City and County of San Francisco passed a resolution awarding the plaintiff a contract to monitor San Francisco's water supply, but the general manager of the Public Utilities Department failed to sign the contract. The court concluded the city "exercised its discretionary, executive function when the [Public Utilities] Commission approved [the plaintiff's] bid and awarded the contract to [the plaintiff] by resolution. Once the contract was awarded," the city "was not free to revoke the contract absent legal grounds for recission. [Citation.] At that point in time the executive function was exhausted," and the general manager's "duty to sign the contract became ministerial." (*Id.* at p. 758.) Here, unlike the situation in *Transdyn/Cresci JV*, where the municipality had awarded the contract and the only action remaining was for the general manager to sign it (*id.* at pp. 749-750, 758), when the City Council passed the resolution there was no contract, or even agreement on key terms. Many tasks remained, including preparing the recommendations, reports, and contracts, all of which required discretionary work on the part of various City officials and personnel. And after

---

market value of the property and the value of the services Childhelp had been providing to the community, recommended a covenant of at least 20 years.

that, as the trial court correctly pointed out, the City had to pass an ordinance approving the sale.[7]

>    B.    *The Trial Court Did Not Err in Granting the City's Motion for Summary Adjudication on Childhelp's Cause of Action for Promissory Estoppel*

>    1.  *Applicable Law and Standard of Review*

"A court may grant a motion for summary judgment or summary adjudication 'only when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."'" (*Doe v. The Roman Catholic Archbishop of Los Angeles* (2021) 70 Cal.App.5th 657, 668; see Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.)  "A defendant moving for summary adjudication of a cause of action must show that one or more elements cannot be established or that there is a complete defense." (*Clark v. Superior Court* (2021) 62 Cal.App.5th 289, 298; see *Regents*, at p. 618; *Mattei v. Corporate Management Solutions, Inc.* (2020) 52 Cal.App.5th 116, 122.)  We review an order granting a motion for summary adjudication de novo (*Jacks v. City of Santa Barbara* (2017) 3 Cal.5th 248, 273) and "decide independently whether the facts not subject to triable dispute

---

[7]    To the extent Childhelp sought a writ of mandate compelling the City to transfer the property, as discussed the resolution did not meet the City Charter requirements for selling City-owned property.  Childhelp does not argue it could have amended or can amend its writ of mandate cause of action.

warrant judgment for the moving party as a matter of law" (*Mattei*, at p. 122; see *Regents*, at p. 618).

### 2. *Childhelp Cannot Rely on Promissory Estoppel To Compel the City To Act Contrary to Its Charter*

"[U]nder the doctrine of promissory estoppel, '[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise.'" (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 310; accord, *Flintco Pacific, Inc. v. TEC Management Consultants, Inc.* (2016) 1 Cal.App.5th 727, 733.) "Promissory estoppel is 'a doctrine which employs equitable principles to satisfy the requirement that consideration must be given in exchange for the promise sought to be enforced.'" (*Kajima/Ray*, at p. 310.) "'The elements of a promissory estoppel claim are "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by [that party's] reliance."'" (*Broome v. Regents of University of California* (2022) 80 Cal.App.5th 375, 389.)

In its cause of action for promissory estoppel, Childhelp alleged that it relied on promises by the City in the lease and the resolution that the City would convey the property and that the City induced Childhelp not to look for other, affordable properties. The City moved for summary adjudication on Childhelp's promissory estoppel cause of action, arguing, among other things, allowing Childhelp to assert promissory estoppel

22

against the City would be contrary to the contracting requirements in the City Charter and the Administrative Code. The trial court agreed with the City and granted the motion.

"Promissory estoppel cannot be asserted against a public entity to bypass rules that require contracts to be in writing or be put out for bids, rules which reflect a public policy to preclude oral contracts or other exposures to liability, including claims of promissory estoppel." (*Ponte v. County of Calaveras* (2017) 14 Cal.App.5th 551, 556; see *Poway Royal Mobilehome Owners Assn. v. City of Poway* (2007) 149 Cal.App.4th 1460, 1476 ["promissory estoppel may not be raised against a public entity when it would defeat the public policy of requiring adherence to statutory procedures for entering into contracts"]; *First Street Plaza Partners*, *supra*, 65 Cal.App.4th at p. 669 ["No case has ever held that a city may be bound to a contract by estoppel."]; *Dynamic Industries Co. v. Long Beach*, *supra*, 159 Cal.App.2d at p. 299 ["When the charter provision has not been complied with, the city may not be held liable in quasi contract, and it will not be estopped to deny the validity of the contract."]; see also *Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Auth.*, *supra*, 23 Cal.4th at p. 316 ["'neither the doctrine of estoppel nor any other equitable principle may be invoked against a governmental body where it would operate to defeat the effective operation of a policy adopted to protect the public'"]; *Parmar v. Board of Equalization* (2011) 196 Cal.App.4th 705, 717 ["'"[t]he general rule is that estoppels will not be invoked against the government or its agencies except in rare and unusual circumstances"'"].)

The parties did not dispute that the City was a charter city, that the reasonable value of the property exceeded $5,000, that

23

the City Attorney had not approved the form of any agreement to sell the property, or that the City had not passed an ordinance or entered into a written contract to sell the property to Childhelp.[8] Even assuming the resolution included a promise to transfer the property to the City, such a promise was unenforceable because the evidence was undisputed the City had not passed an ordinance or prepared a written contract that met the charter requirements to sell City-owned property.  (See *Baldwin v. City of Los Angeles* (1999) 70 Cal.App.4th 819, 827, fn. 1 ["'The Charter of the City of Los Angeles plainly mandates [in Section 385] that a city contract of the type involved here must be signed by the mayor, be approved by the city council, and be approved as to form by the city attorney.'"].)

  *First Street Plaza Partners*, *supra*, 65 Cal.App.4th 650, is instructive.  In that case the developers and the city engaged in lengthy and elaborate negotiations over the development of a parcel of land owned by the city.  The parties, however, never completed the procedures for contracting prescribed by the city's charter, and the city subsequently decided not to proceed with the project.  (*Id.* at p. 658.)  The developers sued the city, asserting the city was equitably estopped from denying the parties had a contract.  (*Id.* at p. 654.)  In affirming an order granting the city's motion for summary judgment, the court in *First Street Plaza Partners* acknowledged that the plaintiffs presented "a case with sympathetic appeal," but held that the provisions of the city's charter, "which itemize[d] specific steps

---

8 The City's undisputed material fact No. 9 stated:  "There [was] no written agreement(s) between Childhelp and City for the transfer of the Property to Childhelp."  Childhelp disputed this fact, but only by citing the 2014 resolution.

necessary for that city to enter into a contract," could not be satisfied by implication or by other means and that, absent compliance with the city charter's contracting requirements, the city could not be "equitably estopped from denying that a contract has been formed." (*Ibid.*)

Childhelp had occupied the property for almost 30 years and had an expectation it would eventually own the property. The 2014 resolution certainly suggested the City was seriously considering selling the property to Childhelp. But it was undisputed the parties never completed the transaction in accordance with the City Charter. While Childhelp cites cases reciting general principles of promissory estoppel, it does not cite any cases where the plaintiff successfully invoked promissory estoppel against a municipality in these circumstances. The trial court did not err in granting the City's motion for summary adjudication on Childhelp's promissory estoppel cause of action.

C. *The Trial Court Did Not Err in Granting the City's Motion for Summary Judgment on Its Unlawful Detainer Complaint*

Childhelp's contention the trial court erred in granting the City's motion for summary judgment on its unlawful detainer complaint rests solely on Childhelp's contentions the trial court erred in granting the City's motion for summary adjudication on Childhelp's promissory estoppel cause of action and in sustaining the City's demurrer to Childhelp's causes of action for declaratory relief and writ of mandate. Because those arguments lack merit, and Childhelp makes no other argument, the trial court did not err in granting the City's motion for summary judgment on its unlawful detainer complaint.

## DISPOSITION

The judgment is affirmed.  The City is to recover its costs on appeal.

SEGAL, J.

We concur:

PERLUSS, P. J.

ESCALANTE, J.*

---

* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 5/5/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| CHILDHELP, INC.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF LOS ANGELES,<br><br>    Defendant and Respondent. | B311945<br><br>(Los Angeles County<br>Super. Ct. No. BC711998)<br><br>**ORDER MODIFYING AND CERTIFYING OPINION FOR PUBLICATION;<br>NO CHANGE IN APPELLATE JUDGMENT** |

THE COURT:

The opinion filed on April 17, 2023 and not certified for publication is modified as follows:

1.  On page 1, change the title of counsel of record, Timothy McWilliams, from Deputy City Attorney to Managing Assistant City Attorney.

2.  On page 2, first paragraph, line 2, change the word "provided" to "stated," so that the sentence reads:

The lease stated that, in lieu of paying rent, Childhelp would provide treatment for child abuse victims and that after 20 years the City would consider conveying the property to Childhelp.

1

3. On page 2, third paragraph, delete the sentence "We affirm," which is the last sentence in that paragraph.

4. On page 2, after third paragraph, add the following paragraph:

We affirm: Childhelp did not allege facts sufficient to state a cause of action for declaratory relief because the resolution passed by the City Council, without an ordinance, did not transfer title to Childhelp; Childhelp was not entitled to a writ of mandate directing the City to complete the sale of the property because the resolution did not create a ministerial duty to sell the property; and Childhelp cannot rely on promissory estoppel to avoid the City's requirements for entering into contracts.

The opinion filed April 17, 2023 was not certified for publication. Because the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), respondent's request for publication under California Rules of Court, rule 8.1120(a) is granted.

IT IS HEREBY CERTIFIED the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

This order does not change the appellate judgment.

PERLUSS, P. J.　　　　　SEGAL, J.　　　　　ESCALANTE, J.*

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

2